GREILING, Respondent, vs. WATERMOLEN, Administrator, Appellant.

*April 20—May 8, 1906.*

*Administrator's sale of land: False representations as to width of street: Rescission: Actual damage: Estoppel: Appeal from county court: "Person aggrieved."*

1. Findings of the trial court to the effect that a diagram made by an administrator and used by him at a public sale of lots falsely represented that a street upon which said lots abutted was sixty feet wide, when in fact it was but twenty-four feet wide, are *held* to be sustained by the evidence.

2. Where one was induced by the vendor's false representations to purchase land which, had such representations been true, would have been worth considerably more than it in fact was, he is entitled to a rescission even though the land was actually worth what he paid for it.

3. At the time of a sale of lots by an administrator it was understood that the purchase moneys were to be used in discharging mortgage and tax liens on said lots and upon other land, and that the purchasers were to have title free from all incumbrances. Without waiting for confirmation of the sale the administrator so applied said moneys. *Held*, that a purchaser who thereafter discovered that the administrator had made false representations as to the width of the street on which the lots fronted was not estopped, by reason of the administrator having paid out the purchase money with his knowledge and consent, from rescinding the sale.

4. One who, having been induced by false representations to purchase land from an administrator, has demanded rescission of the sale and opposed confirmation thereof, is a person aggrieved by an order of the county court confirming the sale, and may appeal from such order.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

It appears from the record and the trial court found, in effect, (1) that Thomas McLean died intestate, leaving no personal property, but leaving, among other real estate, lots 7, 8, 11, and 12 in Catherine McCole's addition to Green Bay, subject to mortgage and tax liens for more than $2,000; that subsequently and on May 14, 1903, the appellant, *John F. Watermolen,* was duly appointed administrator of said estate and thereupon qualified as such; that he was thereupon duly licensed by the county court to sell the real estate of the deceased to pay the debts against said estate, amounting to more than $2,400; that he gave notice of public sale of such real estate to be held on October 10, 1904; (2) that as such administrator and for the purpose of informing prospective bidders and purchasers, including *Herman Greiling,* of the situation, location, and streets of said lots he made and exhibited a dia-

gram purporting to show the situation of said property, its location, and the width of the streets abutting thereon, and of the relative situation of McCole's plat and the McLean plat adjoining the same on the south, with Catherine street running east and west on the line between the two plats; that said lots 7, 8, 11, and 12 were represented by said administrator on said diagram as facing Catherine street and abutting thereon, and said street was thereon and thereby represented to be sixty feet in width; (3) that such representation as to the width of Catherine street was and is false and untrue; that as a matter of fact Catherine street was and is only a narrow street or lane twenty-four feet in width; that said administrator at the time of such misrepresentation and at the time of such sale to said *Greiling* erroneously supposed that said Catherine street was sixty feet in width; (4) that said administrator, in the diagram so exhibited by him to prospective bidders, attempted to show the relative situation of said two plats, which were in fact recorded separately and without reference to each other; that said diagram did not correctly set forth the relative situation to each other in and as to the width of Catherine street, but showed the same to be sixty feet in width, whereas a correct representation of their situation in reference to each other, as shown on such plats so separately recorded, would have shown that there was only twenty-four feet existing between them to make up the width of Catherine street; (5) that said *Greiling* was present at the public auction of said lots, but no bid upon said lots equal to the appraised value thereof was received at such public auction; that a few days thereafter *Greiling* purchased of said administrator the said four lots at their appraised value; that in making such purchase said *Greiling* relied upon said representation as to the width of Catherine street and would not have purchased said lots at such figure had he known that such representations as to the width of Catherine street were false; that said four lots are

worth considerably less situated upon an alley twenty-four feet in width than they would have been had Catherine street been sixty feet in width; (6) that at the time of such purchase *Greiling* paid to said administrator the full purchase price in cash; that shortly thereafter he learned the true width of Catherine street, and thereupon promptly notified said administrator that he demanded a rescission of such sale by reason of such misrepresentation and that he stood ready to reconvey upon the repayment to him of the amount so paid therefor to said administrator, and at all times since has been and now is ready and willing to reconvey said property as said administrator has at all times been fully advised; (7) that said administrator has at all times refused so to do, but persists in retaining such purchase money, and after such demand for rescission said administrator took proceedings in the county court against the protest and objection of said *Greiling* and secured, and on February 1, 1905, had entered, the order and judgment ratifying and confirming said sale of said lots, from which order and judgment *Greiling* appealed to the circuit court; (8) that said administrator at said public auction told the bidders that the real estate offered for sale was subject to a mortgage and tax liens, but that the moneys raised would be used in payment of such claims, and that the bidder would get the land purchased free and clear of all claims; that in making such purchase *Greiling* made no investigation, but relied wholly upon said administrator to give him a full and clear title to the lots so purchased and paid for by him; that said administrator received from such public and private sales and other sources $2,835, and paid out and disbursed for mortgage and tax liens and other expenses $2,630.10, and retains the balance in his hands; that such disbursements were so made by said administrator previous to the confirmation of the sale of said lots or to any order of the court made therein; that all the property of said estate has been disposed of except what

is still so in the hands of the administrator and the homestead occupied by the widow; (9) that the four lots so purchased by *Greiling* for $100 each were so purchased on speculation.

As conclusions of law the court found, in effect, that *Greiling* was entitled to judgment against said estate, reversing the order and judgment of the county court appealed from so far as the same ratifies and confirms the sale of the four lots described to said *Greiling,* and that said matter be remitted to the county court for further proceedings in accordance with the opinion of the trial court on file, and that the county court allow to said *Greiling* out of said estate his taxable costs and disbursements on the appeal to the circuit court, which were therein directed to be taxed and entered in the judgment in the circuit court. From the judgment so entered, with costs, the said administrator, *John F. Watermolen,* appeals.

For the appellant there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

*Sol. P. Huntington,* for the respondent.

CASSODAY, C. J. 1. Error is assigned because the trial court held that the diagram made and used by the administrator at the public sale, as mentioned in the foregoing statement, falsely represented Catherine street to be sixty feet wide. It is conceded that the lots in question are situated in the southern tier of lots in McCole's addition and abut on Catherine street on the south; that that addition is wholly on private claim No. 9; and that the recorded plat of McCole's addition shows that the south line of said private claim No. 9 is twenty-four feet south of the south line of said lots, that said Catherine street is sixty feet wide, and that the south thirty-six feet thereof is in private claim No. 10. It seems that at the time of the public sale the street and lots in question were all one common, and that, although the street was open, it was not graded or worked, and that by looking at the place it could not be told whether there was any street there or not. It is also con-

ceded that the McLean plat is wholly in private claim No. 10, and that the north line thereof abuts on the south line of Catherine street; but it is contended on the part of the administrator that "there is nothing on the recorded McLean plat to indicate but what the south line of Catherine street as shown on the McCole plat is the north boundary line of the McLean plat," for the reason that the starting point as given in the certificate on the McLean plat is indefinite and uncertain as to that point in reference to Catherine street. In other words, the claim is that there is nothing on that plat to indicate whether the north line thereof is the north line of private claim No. 10 or thirty-six feet south of that line. The certificate of the McLean plat shows that it

"is situated and laid out on *all* that part of private claim No. 10 east side of Fox river, which is laying between the continuation of Webster street of the city of Green Bay and the continuation of Monroe avenue or the River Shore road leading from Green Bay to village of Depere. The lots in said addition are marked and numbered, and the length and width of each lot, as also the course and distance, are expressed in figures as the plat sets forth. The starting point of survey is at the northwest corner of lot 20 at Van Buren street, the line and direction of which is intended in all cases to correspond with Van Buren street in the city of Green Bay."

In other words, the plat is bounded on the east by the continuation of Webster street and on the west by the continuation of Monroe avenue and is coextensive on the north and south with the width of private claim No. 10. Among the proposed written findings which the trial court was requested by the administrator to make, is one which reads as follows:

"That Catherine street in question appears on the recorded McCole plat and also on diagram made and used by the administrator, to be a sixty-foot street, but that in fact it is only twenty-four feet wide, being the twenty-four feet in private claim 9."

In the carefully written opinion of the trial judge it is said, in effect, that the lots in the McLean plat "come clear to the north line of private claim 10 and the south line of private claim 9, leaving nothing for Catherine street" except the twenty-four feet mentioned; and that that fact could have been "ascertained by observing the fact that the north tier of lots in the McLean plat comes clear to the south line of private claim 9, and the lots fronting on Catherine street on the McCole plat come within twenty-four feet of the same line;" and that "a careful inspection of the McLean plat shows that the north tier of lots comes to the line between claims 9 and 10." Such conclusions seem to be supported by the record. Certainly, we cannot say that the finding of the trial court, as to the false representations in regard to the width of Catherine street, is against the clear preponderance of the evidence.

2. It is claimed by the administrator that the lots purchased by *Greiling* were actually worth what he paid for them and hence that he had sustained no damage and therefore was not entitled to a rescission of the sale. The only evidence tending to show that the lots were worth what *Greiling* paid for them is that, some four months after he purchased, two adjoining lots of equal value were sold by the administrator at private sale for $107.50 each. It appears and is manifest that they were worth considerably less by reason of fronting on a street only twenty-four feet wide than they would have been had they fronted on a street sixty feet wide, as was supposed by both parties at the time of the purchase. By the false representations mentioned *Greiling* was induced to make the purchase. He was entitled to a rescission by reason of such false representations, without proof of actual damage. This seems to be well settled by numerous adjudications in this court. *Miner v. Medbury,* 6 Wis. 295; *Mecklem v. Blake,* 22 Wis. 495; *Booth v. Ryan,* 31 Wis. 45; *Risch v. Von Lillienthal,* 34 Wis. 250; *McKinnon v. Voll-*

*mar,* 75 Wis. 82, 43 N. W. 800; *Bergeron v. Miles,* 88 Wis. 397, 60 N. W. 783; *Hansen v. Allen,* 117 Wis. 61, 93 N. W. 805.

3. We perceive no error in holding that *Greiling* was not estopped from rescinding the sale by reason of the administrator having paid out the purchase money with his knowledge and consent. As indicated in the findings of the court, it was understood and agreed at the time of the public sale and the time of completing the purchase that the real estate, including the homestead, was incumbered by mortgage and tax liens, and that the purchase moneys were to be used by the administrator in paying and discharging such liens, and that each bidder and purchaser, including *Greiling,* was to have title free and clear of all incumbrances; and such understanding and agreement appears to have had the sanction of the mortgagee and the county court. After *Greiling* had paid the purchase price of the lots and on November 22, 1904, the administrator paid the amount of the mortgage, $2,142.80, to the mortgagee, and on the next day he made and filed his second report in the county court, and thereupon the time fixed by that court for the hearing of that report was December 6, 1904. Four or five days prior to the time so fixed for such hearing *Greiling* was told by Delmarcelle, the purchaser of another lot, that Catherine street was only twenty-four feet wide, and thereupon he offered to reconvey the lots if the administrator would pay back the purchase money, but he refused to do so on the ground that he had already paid out the money. *Greiling* then opposed the confirmation of the sale, but the same was confirmed by the county court February 1, 1905. As indicated in the foregoing statement, the circuit court, on *Greiling's* appeal, reversed the order and judgment of the county court confirming such sale, and held that there was nothing in the circumstances which stood in the way of *Greiling* being relieved from his purchase; that it was not a question between *Greiling* and the individual

who happened to represent the estate, but between *Greiling* and the estate; that, if the administrator had acted without authority in disposing of the money of the estate, it was a matter between him and the estate; that with the sale not confirmed the estate still owned the lots in question, and the administrator was responsible to it for the money he should have in his hands. It appears from the findings that the administrator is protected. The statute expressly authorizes the court to vacate such sale and direct another to be had, in case it should be of opinion that the proceedings in making such sale were unfair. Sec. 3896, Stats. 1898. It is only when it is made to appear to the "court that the sale was legally made and fairly conducted" that the same is to be confirmed. Id. We perceive no error in holding that *Greiling* was not estopped by the circumstances mentioned from rescinding such sale.

4. There can be no question that *Greiling* was aggrieved by the order and judgment of the county court confirming the purchase which he was induced to make by the false representations of the administrator. This court has held that any person who has acquired an interest in the land under a sale made by an administrator or executor by order of the county court is aggrieved by an order of that court vacating the proceedings and therefore may appeal therefrom. *Betts v. Shotton,* 27 Wis. 667; *Estate of Leavens,* 65 Wis. 440, 446, 447, 27 N. W. 324, and cases there cited; *Estate of O'Neill,* 90 Wis. 480, 63 N. W. 1043; *Levi v. Longini,* 82 Minn. 324, 84 N. W. 1017, 86 N. W. 333. The converse of the proposition is equally true.

*By the Court.*—The judgment of the circuit court is affirmed.