MORGAN, Appellant, vs. HODGE and another, Respondents.

*January 31—February 21, 1911.*

*Sales: Fraud: Opinions as to value: Conspiracy: Damages: Remoteness.*

1. Mere expressions of opinion as to the value of property offered for sale, even though the estimate be substantially greater than the real value, will not of themselves alone amount to a fraud upon the buyer; but the law requires good faith and that no artifice or trick be resorted to by the seller to throw the buyer off his guard or prevent inquiry.

2. Although, by a fraudulent conspiracy between the defendants, vendors of a livery stock and business, and plaintiff's partner in the purchase of the same, plaintiff was led to believe that such partner was paying the same price as himself for a half interest therein, when in fact he was paying $1,500 less, plaintiff could not for that reason recover as damages the amount of his loss on a resale of the property, on the claim that if he had known the facts he would not have made the purchase or embarked in the business, such damages not being proximately caused by the act of concealment complained of.

3. But, plaintiff having given his own note to his partner for $750 under the belief that such partner had contributed $1,500 more than himself toward the purchase, which belief was induced by false representations and the use of a dummy check, he was entitled to be indemnified to that amount for the fraud practiced upon him.

4. Although plaintiff, after giving the vendors an opportunity to repurchase the property, sold out at a loss to his partner, releasing the latter from liability for the fraud and receiving indemnity against his note to the partner, which had been lost, yet, if in making such sale he was obliged, in the exercise of reasonable diligence, to pay a substantial sum to secure his release from said note, he is entitled to recover that sum from the defendants.

APPEAL from a judgment of the circuit court for La Crosse county: JAMES O'NEILL, Judge. *Reversed.*

Action to recover damages resulting from a fraudulent conspiracy. A nonsuit was granted at the close of plaintiff's

testimony, and the plaintiff appeals. · The following facts appeared on the trial:

For some time prior to May 1, 1909, the defendants operated a large livery stable upon rented real estate at La Crosse. One Isaac Hollenbeck, Jr., had some negotiations with them looking towards a purchase of the business by trading a farm therefor in the spring of 1908, but no agreement had been reached. About April 18, 1908, Hollenbeck came to New Lisbon, where plaintiff lived, bringing with him one Bovce, a real-estate man, who was employed by the defendants to make the sale, and interested the plaintiff in the project, proposing a partnership in the business. As a result all of the parties, plaintiff, Bovee, and Hollenbeck, went to La Crosse by train on the same day, and on the following day plaintiff examined the stock of carriages, horses, and other personal property, and also the books showing the business done. On the following day *Hodge,* Hollenbeck, and plaintiff went to Alma Center, where Hollenbeck lived, and looked over the farm which Hollenbeck proposed to trade, but no terms could be agreed on and that idea was abandoned. The parties returned to La Crosse and began to talk about a cash trade. Plaintiff had $3,000 in cash, Hollenbeck had a house and lot at Alma Center which defendants were willing to receive at $2,500. Hollenbeck proposed to give his note for $500 so that his individual contribution should also be $3,000. The plaintiff claims that the defendants and Hollenbeck conspired to defraud the plaintiff and induce him to make the purchase, and that the fraud consisted (1) of false representations as to the value of the property, in that they represented it to be worth $16,800, when as matter of fact it was not worth to exceed $11,000, and (2) of inducing the plaintiff to believe that Hollenbeck and he were each paying one half of $16,800 as the purchase price, when as matter of fact Hollenbeck was paying only half of $15,300 for his half interest.

The deal was finally concluded by written agreement

April 22d. By this agreement the livery stock and business was contracted to be sold and possession given to Hollenbeck and *Morgan* May 1st following, in consideration of the sum of $16,800 to be paid as follows: $800 by assuming a debt of $800 owing by defendants, $100 cash down and $2,900 on May 1st by the plaintiff, *Morgan,* a house and lot at $2,500 and a note of $500 by Hollenbeck, $1,500 in cash by Hollenbeck, and the remainder of the purchase price, viz., $8,500, in monthly payments evidenced by notes and secured by chattel mortgage on the stock. This arrangement was apparently carried out on May 1st following, when the parties met and the bill of sale was made out and passed. At this time plaintiff paid over the $2,900; Hollenbeck delivered the deed of the house and lot and his note of $500; Hollenbeck and plaintiff signed notes aggregating $8,500, payable in monthly instalments and secured by a chattel mortgage as provided by the contract; and Hollenbeck drew and delivered to the defendants a check for $1,500 which plaintiff supposed was a *bona fide* payment of cash. In order to make the amounts contributed by the partners even, plaintiff executed and delivered to Hollenbeck his note for $750, which at Hollenbeck's request was made payable to one Wheaton and delivered by Hollenbeck to Wheaton as collateral security to indemnify Wheaton as indorser on a note he had signed at the bank as surety for Hollenbeck. The $1,500 check was a mere dummy check and was returned to Hollenbeck shortly afterwards and destroyed.

The evidence tends to show that the apparent purchase price of $16,800 was arranged between Hollenbeck and the defendants shortly before the contract was signed, and that it was understood between them that *Morgan* should be led to believe that it was the real price and should pay for his half on that basis, while Hollenbeck was to pay only half of $15,300, and that the dummy check was to be given to carry out the deception. It is undisputed that *Morgan* supposed

that Hollenbeck was paying the same for his half as he (*Morgan*) was paying.    The new firm conducted the business for a number of months and paid some of the chattel mortgage notes, but the business did not prove as prosperous as expected and plaintiff soon became convinced that the firm could not pay for it, and, further, that the price paid was too great.    He began to make efforts to sell, without success, and in February, 1909, he was informed by *Bradbury* of the fact that the check for $1,500 was a dummy check and never in fact paid.    Thereupon and on February 20, 1909, the plaintiff served written notice on *Hodge, Bradbury,* and Hollenbeck rescinding the purchase, demanding back the money he had paid and the surrender of his notes, and offering to return the property.    This demand not being acceded to, he immediately commenced an action against the three last named parties, the nature of which does not clearly appear in the evidence, but it is referred to in the briefs as an action for rescission on the ground of fraud.    In this action it was stipulated that the property be placed in the hands of one Atkinson, and thereafter the defendants took possession of the property under the chattel mortgage and advertised it for sale.    Before sale plaintiff received an offer from Hollenbeck for the purchase of his half interest in the property, and he thereupon notified the defendants of the offer and its terms and gave them an opportunity again to rescind.    Nothing resulting from this, he closed with Hollenbeck's offer and received from him $1,425 and a contract releasing him from liability on the $750 note (which had been lost).    In order to make this settlement he was obliged to release Hollenbeck from all liability for the alleged fraud, but the release expressly reserved all rights of action against *Hodge* and *Bradbury*.

Upon this showing the circuit court was of the opinion that the only legal damage suffered by the plaintiff in any event was the damage resulting from the giving of the $750

note, and inasmuch as the plaintiff had been given a contract protecting him from any liability on that account he had no cause of action.

For the appellant there was a brief by *Bunge & Bosshard,* and oral argument by *George W. Bunge.*

*Jesse E. Higbee,* for the respondents.

WINSLOW, C. J. Although the facts seem somewhat complicated the case is really simple. The action is to recover damages suffered by reason of a fraudulent conspiracy. Plaintiff's claim is that the defendants conspired with Hollenbeck to induce him to make the purchase of the stable by fraudulent representations as to the value of the property and by concealing from him the fact that Hollenbeck was obtaining his half of the property for a lower price; that he relied on the representations and made the purchase and has suffered legal damage as the proximate result of such purchase. Whether there was ever a right of rescission, or whether if there was once a right of rescission it has been lost, are matters of no moment. The present action is not an action for rescission but for damages, and there can be no recovery unless it be shown that a legal fraud was committed on the plaintiff from which damages have proximately resulted to him.

We agree entirely with the conclusion of the circuit court as to the first element of fraud relied upon. Men are allowed when selling property to express their opinion as to its value and the law takes account of the natural, if not unavoidable, tendency of the owner to place an exaggerated value upon his own property when he is about to sell it. If every vendor were to be held to be guilty of fraud whenever he places the value of property about to be sold at a considerably higher figure than witnesses would place it on the witness stand, ordinary commercial transactions would become highly dangerous. Purchasers are presumed to know that

the vendor will, if asked as to the value, place it as high as he thinks the property will bear, and, on the other hand, the vendor knows that the purchaser will endeavor to convince him that the property is worth considerably less. " 'It is naught, it is naught,' saith the buyer, but when he is gone his way, then he boasteth." Chaffering as to value has gone on ever since the race emerged from barbarism and is likely to go on so long as the race retains its commercial propensities.

On these universal and very human traits is based the rule that expressions of opinion as to value, even though substantially greater than the real value, will not of themselves alone amount to fraud. The law requires good faith, however. While it will not place the badge of fraud upon a mere extravagant estimate of value, it sternly requires that no artifice or trick be resorted to by the seller to throw the purchaser off from his guard or prevent inquiry, and it requires a vendor who has superior knowledge of values in dealing with one whom he knows or has reason to believe is ignorant on the subject to place the property honestly before the purchaser and give him every opportunity to ascertain for himself the truth. *Maltby v. Austin,* 65 Wis. 527, 27 N. W. 162; *Mosher v. Post,* 89 Wis. 602, 62 N. W. 516; *Farr v. Peterson,* 91 Wis. 182, 64 N. W. 863; *J. H. Clark Co. v. Rice,* 127 Wis. 451, 106 N. W. 231.

In the present case the property consisted of a large stock of horses, carriages, and conveyances, with the usual paraphernalia of a livery stable, which were being sold in connection with an established business. The room for differences of opinion as to the value of such a quantity of property was manifestly very great. It appears affirmatively that the plaintiff was allowed and even encouraged to make examination of every article of property. No difficulties were thrown in his way. He was shown the books of account and apparently every effort was made to put him in possession of

every material fact.   He was a man of mature years who had once been sheriff of his county.   He had been in the hotel business at New Lisbon for twelve years and had previously been in the livery business at Necedah.   No advantage was taken of him.   He had every opportunity to ascertain the value of the property which he was proposing to purchase, and we find no ground for the claim that the statements as to its value can be considered as amounting to fraud.

As to the fraudulent concealment of the amount which Hollenbeck was paying for his half interest in the business the considerations are different.   The plaintiff's claim as to this alleged element of fraud is substantially this: that had the plaintiff known of this inequality in the price he would not have made the purchase or gone into the business with Hollenbeck, and that having thus been induced to embark in the business and having been obliged to sell out at a loss he should be allowed to recover as damages the difference between what he paid and what he received on the sale to Hollenbeck.   The circuit court held that the only element of damage legally chargeable to the concealment was the giving of the note to Wheaton to even up the pretended difference in the contributions of the partners, and hence when this note was canceled or the plaintiff had received indemnity against it no cause of action remained.

The plaintiff's claim, if approved, would certainly open up a large and rather vague field of liability.   It would mean substantially that if one partner by concealment obtained some advantage over his copartner in the matter of his contribution to the capital of the firm, the partner so deceived might on discovery of the concealed fact dissolve the partnership, close out the business, and recover his original investment from his copartner.   We are not prepared to sanction so broad and sweeping a rule as this.   In the present case it seems to us impossible to say with that degree of certainty which should characterize legal conclusions that the loss suf-

fered by the plaintiff was proximately caused by the act of concealment complained of. The fact that plaintiff unwittingly paid a larger price for his half than his partner did not make the property any less desirable: there was just as good a prospect of the business being profitable in one case as in the other. So far as the evidence throws light on the situation, it does not with any certainty indicate that the act of concealment in question was the proximate cause of the plaintiff's money loss. It certainly was not the cause of the unsatisfactory business done by the new firm, and it did not render them incapable of meeting their obligations. They apparently had no property except what they put into the business, and they loaded themselves with what seems to have been an impossible debt. The result was bankruptcy and a forced sale of the firm property. But to say that the plaintiff's loss resulting from this is chargeable to the act of concealment complained of is to indulge in mere conjecture. The conclusion is too remote from the premise; there are too many substantial and sufficient causes between.

As to the $750 note, however, the plaintiff was certainly entitled to relief. This was based solely on a false representation of fact. He was entitled to recover his money if he had paid it, or he was entitled to have it canceled or to be indemnified against the possibility of being held for it in case it could not be canceled. The latter seems to have been the case here, and it is admitted that he has received a "contract" indemnifying him. On this ground the plaintiff was nonsuited because the trial court concluded he had thus obtained the entire relief to which he was entitled. But it seems to us that here was plain error. The plaintiff was entitled to this indemnification without expense. If, acting with reasonable prudence, he was obliged to pay for his release from this fraudulent obligation, he is entitled to recover what he was obliged to pay. He must, of course, exercise that degree of diligence in extricating himself from his difficulties which a reasonably prudent man would exercise under like circum-

stances, and if, after having done so, he was obliged to purchase his indemnity from this fraudulently secured note, he is entitled to recover the sum which he was obliged to expend for that purpose. There certainly was ample evidence in this case to sustain the conclusion that, in settling with Hollenbeck and obtaining his release from the note, he was in effect compelled to pay for his release. He surrendered his half ownership of property which had cost him $3,000 a few months before, and to which he had afterwards contributed $450, for the sum of $1,425 in cash and a release from the note. *Prima facie* it would seem from these facts alone that the plaintiff paid full value for the release. Other facts may perhaps appear which would show that the parties did not consider that the plaintiff was paying the face of the note for his release, but certainly there was ample evidence to support the conclusion that the plaintiff paid a substantial sum to secure his release; and if it be further found that he paid that sum in the exercise of reasonable diligence and that the note was induced by a fraudulent conspiracy in which the defendants joined, there should be a recovery for the sum so paid.

*By the Court.*—Judgment reversed, and action remanded for a new trial.