ROGERS, Respondent, vs. ROSENFELD and another, Appellants.

*September 16—October 6, 1914.*

*Deceit: Sale of mining stock: Statement of fact or opinion? Finding by court, when presumed: Falsity of statement: Measure of damages: Evidence: Competency: Value of stock: Corporate books, etc.: Admissions: Negligence of purchaser: Special verdict: Refusal to submit questions: Instructions to jury: Arguments to jury: Discretion.*

1. Where in an action for deceit in the sale of mining stock there was no request for a question in the special verdict as to whether an alleged false representation was intended by defendant as a mere expression of opinion or a statement of fact, a finding will be presumed, in support of the judgment, that the representation was intended as a statement of fact.

2. Representations in such case that "there was ore enough on the dump to run the mill five years," and that "it was a high grade of ore," were statements of fact; and a representation that "there was half a million dollars' worth of ore on the dump ready to mill" was not clearly an expression of opinion, but when made by a seller who was narrating what he had seen on the property to a buyer who never saw it and had no reasonable opportunity to see it, must be considered a statement of fact.

3. Evidence that the same dump existed three years later, that only $14 worth of ore had been shipped in the interim or had ever been shipped from the mine, that one defendant as secretary of the corporation reported the mine as worthless, and that the property was abandoned, was sufficient to warrant the jury in finding that the representation as to its value was false.

4. Evidence that the assets of a mining corporation were $500,000 less than represented, that one million shares of stock of $1 each had been issued and were outstanding, that plaintiff bought in at forty cents per share, or at the rate of about $400,000 for the property, and that the property was worthless, is sufficient, as against the defendants, to warrant the jury in fixing plaintiff's damages at an amount not exceeding fifty cents per share.

5. The fact that other sales of shares had actually been made, at or about the time of plaintiff's purchase, for forty or fifty cents per share, was not more than countervailing evidence on the question of value and was not conclusive on the jury.

6. Actions are not to be dismissed or judgments reversed merely because of difficulty in fixing accurately the amount of damages.

7. In an action by one shareholder against other shareholders in a mining corporation for deceit in the sale of shares to him, the nature of the corporate organization, the number of shares issued, the par value per share, how the shares were paid for, the corporate assets and liabilities, the kind of business carried on and the extent of its work, and the doings of the corporation in respect to selling its shares as well as in respect to operating and exploring the property, were all relevant on the question of the value of the corporate shares as well as on the question whether the corporate operations were carried on in good faith for the purpose of mining or merely as a blind for the purpose of selling stock.

8. As between the members of a private corporation, the corporate books relating to the assets, organization, liabilities, and business affairs of the corporation are treated as a public record and have the same competency as evidence; hence, in an action between shareholders for damages growing out of fraud in the sale of shares, the corporate records consisting of books and documents treated by the corporation as records or preserved in its books by annexation thereto, relating to corporate affairs and relevant to the issue, were competent against the defendants.

9. In such an action, a letter written by one defendant to the other more than a year prior to the transaction in question, and letters written by one defendant to another person relating to the sale of shares in the corporation, were competent and relevant, first as admissions of the parties defendant, and second as tending to show that they were both at and prior to the transaction in question engaged in the sale of stock of the corporation.

10. But a letter to one of the defendants, and certain assays found among the papers of the corporation (a mining company), but which had not been incorporated in its books or records, were properly excluded.

11. The mere fact that the purchaser of mining stock believed a statement not grossly improbable, with respect to the amount and value of ore on the dump ready to mill, where the seller was in a position to know whereof he spoke but, the mine being in a distant state, the purchaser had no reasonable opportunity for examination, did not warrant a finding of negligence on the part of the purchaser.

12. It is not error to refuse to submit a proposed question in a special verdict where there is no evidence which would warrant a finding thereon favorable to the party proposing it.

13. In an action for deceit in the sale of mining stock, the question being whether the purchase was induced by the false representations alleged, a requested instruction that "if by reason of the statements of persons other than defendant who were not acting for him in the matter, the plaintiff became interested in and was led into purchasing the stock in question, then you cannot find that he was induced to make such purchase by reason of any statement made by the defendant," was too broad and sweeping and was properly refused.

14. Requested instructions to the jury are properly refused when there is no basis for them in the evidence.

15. Considerable latitude should be allowed to counsel in the oral argument to the jury, and in this respect a great deal must be left to the discretion of the trial judge. The remarks of counsel in this case and the rulings of the trial court thereon are *held* not prejudicially erroneous.

APPEAL from a judgment of the circuit court for Juneau county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

For the appellants there was a brief by *J. T. Dithmar,* attorney for *Barge,* and *Daniel H. Grady,* attorney for *Rosenfeld,* and oral argument by *Mr. W. H. Farnsworth* and *Mr. Dithmar.*

For the respondent there was a brief by *Grotophorst, Evans & Thomas,* and oral argument by *Evan A. Evans.*

TIMLIN, J. This action was to recover damages for deceit in the sale of mining stock of the Tusas Peak Gold and Copper Mining Company. The plaintiff purchased the shares from the defendant *Rosenfeld,* and the defendant *Barge* aided *Rosenfeld* in making the sale. Three misrepresentations were charged. The first two were eliminated by somewhat doubtful rulings of the trial court in favor of the defendants, and the jury found upon the third as follows: (2) The defendant *Rosenfeld,* for the purpose of inducing the plaintiff to purchase the stock, represented to the plaintiff

that there was ore enough on the dump at the mine to run a mill three to five years; that it was a good grade of ore, a high grade of ore, and that there was a half million dollars' worth of ore on the dump ready to mill. (3) This representation was not understood by the plaintiff as an expression of opinion. (4) The plaintiff was induced to purchase by reason of such representation. (5) Plaintiff relied on such representation in making the purchase of the stock. (6) Such representation was false and untrue. (7) Plaintiff's damages are $319.50. Similar findings were made by the jury with reference to the defendant *Barge.*

Errors are assigned: (1) In denying defendants' motion for a directed verdict; (2) in the admission and rejection of evidence; (3) in refusing to include in the special verdict questions requested by defendants; (4) in refusing requested instructions.

In support of the first error it is argued that the representations found to have been made were mere expressions of opinion, that there was no competent evidence of the falsity of such representations or of damages resulting therefrom, and that it appears affirmatively that the plaintiff did not, in making the purchase, rely upon these representations. But the sale of stock was made in Wisconsin. The alleged mine is in New Mexico. The defendant *Rosenfeld* was a large stockholder and his brother was an officer thereof and participated in the management. The defendant *Rosenfeld* had recently returned from the mine and the plaintiff never saw it and had no reasonable opportunity for examination. There was no request for a question to be embodied in the verdict asking whether the defendant intended this statement as a mere expression of opinion or a statement of fact, hence we must presume a finding in support of the judgment that the representation was intended as a statement of fact. Sec. 2858*m,* Stats.

With reference to the evidence of untruth. In 1909, No-

vember 9th, as shown by the report of the president and sec-
retary to the stockholders, the mine, which included the dump
in question, was quite worthless.   The defendant *Rosenfeld*
signed this report as secretary, having since the sale in ques-
tion taken that office.   The same dump or ore pile was there
at this time in 1909 as was there in 1906 when the represen-
tations were made and the shares sold.   This dump was
about thirty feet high and thirty by sixty feet at the base.
In 1906 the corporation had a mill of 100 tons' daily ca-
pacity.   According to the books of the corporation the total
amount of ore sold prior to 1909 was about $14.   Defendant
*Rosenfeld* testifies that there was a quantity of what he was
told was ore on this dump, but he did not know the difference
between ore and refuse, but he denies that he made the rep-
resentation in question.

The appellants cite *Morgan v. Hodge,* 145 Wis. 143, 129
N. W. 1083; *Jones v. Kinney,* 146 Wis. 130, 131 N. W. 339;
*Burwash v. Ballou,* 230 Ill. 34, 82 N. E. 355, 15 L. R. A.
N. s. 409; *Tuck v. Downing,* 76 Ill. 71; *Crocker v. Manley,*
164 Ill. 282, 45 N. E. 577, 56 Am. St. Rep. 196, and other
cases, to support their contention that the representations
found to have been made express mere matters of opinion
and are therefore nonactionable; while the respondent cites
to the contrary, *Warner v. Benjamin,* 89 Wis. 290, 62 N. W.
179; *Barndt v. Frederick,* 78 Wis. 1, 47 N. W. 6; and
*Brown v. Ocean A. & G. Corp.* 153 Wis. 196, 140 N. W.
1112.

The representation here found by the jury to have been
made may be compared to those held actionable in each of
the cases last cited.   It is often a close question whether a
statement or representation put forward by the seller to in-
duce a purchase is a statement of fact or the mere expression
of an opinion, as the preceding cases amply show.   It is quite
apparent that the misrepresentation found by the jury to
have been made in the instant case does not, at least in its

entirety, take the form of an expression of opinion. "There was ore enough on the dump to run the mill five years," and "it was a high grade of ore," are statements of fact. "That there was half a million dollars' worth of ore on the dump ready to mill" is somewhat in the nature of an expression of opinion, but not clearly so, and when coming from a seller who was narrating what he had seen on the property to a buyer who never saw it and had no reasonable opportunity to see it must be considered a statement of fact. Besides this we may consider that:

"The mere fact that a statement takes the form of an expression of opinion, however, is not always conclusive. Whenever there is any doubt as to whether it is made as a mere expression of opinion or as a statement of fact, the question must be determined by the jury or court." *J. H. Clark Co. v. Rice,* 127 Wis. 451, 465, 106 N. W. 231.

Here we have the fact found against the appellants by the verdict and the judgment. This finding rests upon evidence.

"It is generally held that where the property involved is situated at a distant place and thus an inspection cannot be made without expense and inconvenience, and the prospective purchaser is ignorant of the facts, he may rely on the vendor's positive statements regarding the property and may hold him liable if they are false and fraudulent, even though they are representations of the value, quality, and condition of the property." 20 Cyc. 58 and cases in notes 51 and 52.

We must hold that the representation found to have been made under the circumstances stated was, if false and if relied upon, an actionable misrepresentation. When it was shown that the same dump existed at the same mine in 1909 and that only $14 worth of ore had been shipped in the interim or had ever been shipped from the mine, and that the defendant *Rosenfeld* as secretary of the corporation reported the mine as worthless, coupled with proof tending to show that the property was abandoned, evidence was presented from which the jury was authorized to infer that the repre-

sentation was false. The declaration of *Rosenfeld* against his interest was competent evidence against him. The corporation records and their competency as against the defendant *Rosenfeld,* and the competency of both as against both defendants, will be considered hereafter.

Where a mine is admitted to be worthless this carries an admission that the dump, which is part of the mine, is worthless, and a mill situated upon or built as an adjunct to a worthless mine is usually worthless. At least the jury was authorized to find that the representation made in 1906 that there was a half a million dollars' worth of ore in this dump was untrue.

As we understand the appellants they contend that even assuming this there was no proof of plaintiff's damages. The difficulties which the appellants see in assessing damages are largely imaginary. Where the jury is furnished with evidence that the corporate assets are $500,000 less than represented, and a certain number, say one million, shares of stock of $1 each had been issued and were outstanding, and that the plaintiff bought in at forty cents per share or at about $400,000 for the property, and there is further evidence that the property is worthless, it may be found by a very easy computation that the represented value was at least fifty cents per share, or $500,000, and the actual, real, or market value was nothing, or was five cents per share, and the difference this would make on the number of shares bought by him constituted plaintiff's damages. The defendants could not complain, under such a condition of the evidence, if the jury found damages in favor of the plaintiff of less than fifty cents per share.

Cases are not dismissed nor are judgments reversed merely because of difficulty in fixing accurately the amount of the damages. *Treat v. Hiles,* 81 Wis. 280, 50 N. W. 896. The fact that sales of shares had been actually made, at or about the time of plaintiff's purchase, for forty or fifty cents per

share, was not more than countervailing evidence on the question of value and was not at all conclusive on the jury. That is all that is necessary to decide in this case, but it should be noted that some of the cases go further:

"When the real pecuniary condition of the company is shown, from which it appears that the stock was worthless, the price at which it sold in New York or elsewhere is entitled to no weight upon the question of its value. The plaintiff . . . was under no obligation . . . to mitigate his loss by cheating some ignorant purchaser himself. The question is, what was the stock really worth at the time of the purchase; not what it would sell for by practicing the deceptive arts resorted to . . . to inflate the price." *Hubbell v. Meigs,* 50 N. Y. 480.

When we come to the consideration of appellants' points and arguments with reference to the admission of incompetent evidence, we must weigh this argument by considering all the issues presented by the pleadings, including those properly charged therein, but which the court for lack of support in the evidence or for other reason refused to submit to the jury. It was averred that the defendants falsely represented the stock as full paid and nonassessable; that the shares were being sold for the purpose of raising money to build a new shaft house; that the corporation was the owner of 260 acres of rich mineral land and had perfect title to said land and that it owned a large sawmill, and that an assay of the mill-run ore on the dump showed a certain percentage of mineral, and the representations with reference to the quantity and value, etc., of the ore in dump, hereinbefore mentioned. We must also consider all the background of fact properly in evidence, including evidence tending to show that defendants were co-operating in the sale of the shares to the plaintiff. We cannot attack each ruling as if it stood alone, disassociated from the issues made by the pleadings and from the other facts in the case then properly in evidence or thereafter and during the trial properly supplied. The

defendants were confessedly shareholders in the corporation issuing the shares in question and the plaintiff became such by his purchase. The nature of the corporate organization, the number of shares issued, the par value per share, how the shares were paid for, the corporate assets and liabilities, the kind of business carried on and the extent of its work, and the doings of the corporation in respect to selling its shares as well as in respect to operating and exploring the property, were all relevant on the question of the value of the corporate shares as well as on the question whether the corporate operations were carried on in good faith for the purpose of mining or merely as a blind for the purpose of selling shares of stock. The corporation had, speaking through its books and records, which include everything preserved in the books relating to the corporate affairs, made certain declarations upon these subjects. Were such declarations available as evidence in an action for deceit brought by one shareholder against two other shareholders? As against the defendant *Rosenfeld* and with reference to those declarations made by him or made by the corporation at meetings at which he was present and to which he assented, there cannot be much question. *Graff v. P. & S. R. Co.* 31 Pa. St. 489; *Diehl v. Adams Co. Mut. Ins. Co.* 58 Pa. St. 443.

But the law includes these and goes farther. The relation between members of a corporation and the corporate books and records relating to proper objects of corporate concern and the relation between ordinary citizens and public records are quite similar. In each case an officer having authority in law makes a record of transactions permitted or required by law to be recorded. In the former case the member by joining the corporation has brought himself within the corporate regulations. In the latter the general rules of law bring the citizen in the same relation to the public records. Therefore, as between the members of a private corporation, the corporate books relating to the assets, organiza-

tion, liabilities, and business affairs of the corporation are treated as a public record and have the same competency as evidence. *Hayden v. Williams,* 96 Fed. 279 and authorities cited; *Brown v. Ellis,* 103 Fed. 834; *Rudd v. Robinson,* 126 N. Y. 113, 26 N. E. 1046; Angell & Ames, Corp. (7th ed.) §§ 681, 682; 3 Jones, Ev. (Horwitz ed.) §§ 516, 516a, 517; 6 Thomp. Corp. (1st ed.) § 7740; 3 Elliott, Ev. § 1946.

In an action between shareholders for damages growing out of fraud in the sale of shares this rule of evidence was applied in *Hubbell v. Meigs,* 50 N. Y. 480. We conclude that the corporate records, consisting of books and documents treated by the corporation as records or preserved in its books by annexation thereto, relating to corporate affairs and relevant to the issues, were competent evidence against both defendants. Along with this class of evidence there was offered by the plaintiff a letter written by the defendant *Rosenfeld* to the defendant *Barge* dated July 7, 1905, more than a year prior to the transaction in question, and some letters written by the defendant *Barge* to one Wopat relating to the sale of shares in the corporation in question. These are considered competent and relevant, first as admissions of the parties defendant, and second as tending to show that they were both at and prior to the transaction in question engaged in the sale of stock of this corporation.

The ruling of the circuit court excluding a letter of December 26, 1907, from one Shipman to Otto Rosenfeld, found among the papers of the mining company, was proper because it was not made to appear that the corporation had taken any action thereon so as to incorporate it in its books or records. It was the unsworn statement of Mr. Shipman to Otto Rosenfeld. The same is true of the assays of C. F. Davies. Had there been shown some adoption or recognition by the corporation of these documents or the statements therein contained the documents would have been made com-

petent as evidence, but even on that hypothesis we could not find the exclusion prejudicial.

The point is made that the trial court should have submitted to the jury a question inquiring whether the plaintiff at the time of the making of the representations in question had reasonable opportunity to make such investigation as would have resulted in his discovering the truth or falsity thereof. We do not find any evidence in the case sufficient to support an affirmative answer to this question; hence there was no error in refusing to submit it.

It is contended that the court erred in refusing to submit to the jury the following question: "Ought the plaintiff, in the exercise of ordinary care and prudence as an ordinarily intelligent man, to have relied on such representation as true?" Also the following: "Did the plaintiff show reasonable diligence to ascertain the actual character and truth of the same?" We find no evidence in the record which would justify a negative answer to either of the last two proposed questions. The court ruled upon this request as follows:

"The court is of opinion that such questions as those requested ought not be submitted on the facts and circumstances in this case. The property of the mining company was not present where the plaintiff could examine it. He was not obliged to go to New Mexico or to Manistee, Michigan, at great expense for the purpose of investigating the truth of the representations. The court concludes that under the circumstances such questions ought not be submitted."

We agree with this ruling. There must be some evidence from which the jury could find or infer negligence on the part of the purchaser. The mere fact that he believed a statement not grossly improbable, but relating to a condition sometimes present in legitimate mining enterprises, would not tend to establish want of ordinary care. A finding of negligence in this case as in other cases must be supported by some evidence, and there is nothing upon which to rest

such finding here except the nature of the representation, the kind of property involved, and the fact that the plaintiff believed what the defendant said to him. Where the defendant was in a position to know whereof he spoke and the plaintiff had no reasonable opportunity for examination, mere credulity is not negligence.

It is contended that the court erred in refusing the following requested instruction:

"In relation to question 4 you are instructed that if, by reason of the statements of persons other than defendant who were not acting for him in the matter, the plaintiff became interested in and was led into purchasing the stock in question, then you cannot find that he was induced to make such purchase by reason of any statement made by the defendant."

This request was properly refused. It was too broad and sweeping under the rule of *Darlington v. J. L. Gates L. Co.* 151 Wis. 461, 138 N. W. 72, 139 N. W. 447, and cases cited in opinion.

We find no evidence upon which to base the requested instruction that if it appeared that the representation, if any, made was not an assertion as of defendant's own knowledge, but rather upon information and belief, the defendant really believing such statement, then the jury would not be warranted in answering the fifth question "Yes." This fifth question is as follows: "If you answer question No. 2 'Yes,' then did the plaintiff rely on said representations in making the purchase of the stock?" The court was justified in refusing it because there was no evidence to show that the statement purported to have been made upon information and belief. If defendant asserted positively and as if of his own knowledge that which he did not know and it was untrue, he would be liable to the person relying on his statement. Nor is there any evidence that in making it defendant gave the source of his information; wherefore the requested instruction on this latter point was properly refused.

Much complaint is made of the conduct of respondent's

Rogers v. Rosenfeld, 158 Wis. 285.

counsel in arguing the case to the jury. We cannot under-
take to notice all these objections in detail. Considerable
latitude should be permitted in oral argument and it is not
always possible to restrain intense zeal and great eloquence
within narrow bounds. In this respect a great deal must be
left to the discretion of the trial judge. What might be
an improper remark or criticism under some circumstances
might be excused, mitigated, or even justified if we had be-
fore us the full argument and the argument to which it is a
reply. The record before us shows the objection of appel-
lants' counsel made to the court containing his statement
of the remarks of opposing counsel to which he objects. In
the first instance the court admonished the counsel for re-
spondent and declared the language improper. In the second
instance the objection was made in the same way, and the
court overruled the objection and stated that counsel for re-
spondent had merely used another case as an illustration.
The third objection of this kind, made in the same way,
brought a ruling from the court declining to admonish coun-
sel for respondent to change his argument. This argument
was to the effect that the defendant Rosenfeld sold a large
number of shares of stock at a commission of twenty-five
cents per share and made $30,000 out of it. The statement
is not accurate, but there was some foundation for it in the
evidence. The fourth objection, made in the same way, was
to an argument having some support in the evidence. The
fifth objection, made in the same way, was based upon a
claim that counsel for respondent had misstated the argu-
ment to which he was attempting to reply. The sixth objec-
tion, made in the same way, was sustained by the court.

Considering the issues and the evidence, we are not con-
vinced that the remarks of plaintiff's counsel affected the
verdict to the prejudice of defendants. We have noticed the
principal points made. Others have been considered and
overruled.

*By the Court.*—Judgment affirmed.