MIRANOVITZ and another, Respondents, vs. GEE and another, Appellants.

*April 14—May 2, 1916.*

*Vendor and purchaser of land: Fraud: Fiduciary relation: Rescission of contract: Actionable representations: Fact or opinion? Waiver of right to rescind: False testimony as barring right to relief: Letter of trial judge: Findings of fact.*

1. A fiduciary relation exists when confidence is reposed on one side and there is a resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal.

2. Thus, where ignorant foreigners who spoke English very imperfectly supposed that in purchasing certain land and personal property they were represented by a fellow countryman in whom they trusted and who assured them that he would give them a

good deal and that they could depend upon him in making a fair transaction for them, but who was in fact the paid agent of the vendors, the relation of such agent to the purchasers was of a fiduciary character and for his false statements in respect to the property the vendors are liable, although no artifice or trick was used to induce reliance thereon or prevent investigation.

3. Under the circumstances above stated the purchasers, having no other means of ascertaining the facts as to the value of the property, had a right to rely upon the representations of the agent relating to the value of the land, the quality of the soil, the extent of the cultivated area, and the value of the stock and crops, and such representations, even though they took the form of expressions of opinion, are to be considered as statements of fact.

4. The representations made being statements of fact, false, material, and relied upon by the purchasers, they had a right to rescind the contract even though the property was actually worth the price paid for it.

5. It is not necessary, in such a case, that the representations made be of such a character as to influence the conduct of a person of ordinary intelligence and prudence.

6. Although made in good faith, false statements are actionable if material and relied upon by the party to whom they are made.

7. Where plaintiffs had been induced by false representations to purchase land and personal property from defendants for $3,500, paying $800 down and giving a mortgage on the personalty for $600 and a mortgage on the land for $2,100, and defendants knew that plaintiffs could not make the payments, the sale of a small part of the personal property by plaintiffs was not a waiver of the right to rescind.

8. A letter sent to counsel by the trial judge, in transmitting a copy of his decision, in which the court remarked that it was apparent that one plaintiff "was lying whenever he saw a chance to lie," is not, if proper to be considered at all, a sufficient basis for denying equitable relief to plaintiffs on the ground that they testified falsely, where the findings of fact subsequently made and twice reviewed by the court contained no reference to the matter.

APPEAL from a judgment of the circuit court for Wood county: BYRON B. PARK, Circuit Judge. *Affirmed.*

Action by vendees to rescind contract for the purchase of certain real estate and personal property. Plaintiffs are Russian Jews, one being thirty and the other twenty-five years of age. They came to this country about four years ago, and

on June 27, 1914, purchased certain lands and personal property of the defendants for $3,500, paid $800 down, and gave a chattel mortgage for $600 on the personal property and a mortgage for $2,100 on the real estate.  Plaintiffs went into possession of the property, which they claimed was represented to them as worth $4,000, upon which there were certain stated amounts of crops growing, the soil being represented as fertile; that said representations were in fact untrue; that plaintiffs knew nothing about farming in this country, did not know how much land was included in an acre, and they supposed themselves to be represented by one Ginsberg as a friend and countryman, who was in fact the agent of the defendants and received a commission for making the sale to plaintiffs.  The defendants denied the allegations of the complaint and alleged that the plaintiffs were estopped from claiming a rescission of the contract by reason of the fact that plaintiffs had disposed of some parts of the personal property and had not made a sufficient tender back of the property received by them to entitle them to rescission. The trial court found for the plaintiffs, who had judgment rescinding the contract and awarding them $800, the amount of money paid down by them.  From such judgment defendants appeal.

For the appellants there was a brief by *D. D. Conway,* attorney, and *Grady, Farnsworth & Kenney,* of counsel, and oral argument by *Mr. Conway* and *Mr. Daniel H. Grady.*

For the respondents there was a brief by *Goggins, Brazeau & Goggins,* and oral argument by *Hugh W. Goggins* and *Theo. W. Brazeau.*

ROSENBERRY, J.  The defendants attack the findings on the ground that they are contrary to the great preponderance of the evidence.  Briefly stated, the findings so far as material are as follows: Plaintiffs were uneducated and ignorant and able to speak the English language very imper-

fectly; were entirely ignorant of farm-land values, the care or value of stock or machinery, or the measure of land, and of every other matter connected with farming or farm life, and prior to the day on which the transaction was concluded had never been in Wood county, where the land was situated, and knew nothing about lands or land values in the vicinity of the city of Grand Rapids or of the character of the soil, and had never had any experience in farming; that plaintiffs came to the city of Grand Rapids and applied to one Jacob Ginsberg, a fellow countryman, who assured the plaintiffs that he was well acquainted with real estate in the vicinity of Grand Rapids, that he would give them a good deal, and that they could trust him and depend upon him in making a fair transaction for them; that the defendants on June 27, 1914, were the owners of the property in controversy; that the land, forty acres in extent, had been used for many years without fertilization or care, was sandy land of which twenty-five acres were cleared, and with the exception of six or eight acres greatly run down and of little fertility and incapable of producing good crops, all of which was known to Ginsberg and the defendants; that the forty acres of land in question, together with the buildings thereon, was worth on the 27th day of June, 1914, not to exceed $1,800, the personal property not to exceed $1,000, and the crops growing thereon not to exceed $200, a total value not exceeding $3,000; that prior to June 27, 1914, the defendants had informed Ginsberg of their desire to sell the property in question, and that on that day he acted as the agent of the defendants and was paid $300 for his services; that on said 27th day of June the plaintiffs went upon the land in question, remained there about forty-five minutes, were given a lunch, and were told by the defendants that there were sown and planted seven acres of 'corn, fifteen acres of rye, and six acres of potatoes; that plaintiffs went over the farm and through the house and barn and looked at the stock; that at the time of said visit the personal

property was represented by Ginsberg to them as worth $1,200, the crops as being worth $500; that $30 per month could be made from the sale of milk; that the farm would produce 100 bushels of potatoes to the acre, and that there were six and one-half acres of potatoes, seven acres of corn, and eighteen acres of rye growing thereon, and that said farm, crops, and personal property were worth $4,000; that the plaintiffs relied on such statements and would not have purchased except for such representations; that there was in fact growing on the farm on the day in question not to exceed fifteen acres of rye, five or six acres of corn, and three and one-half acres of potatoes, and that Ginsberg knew at the time of making such representations as he did make that they were false; that plaintiffs entered into a contract to purchase by which they were to pay $3,500 for the land, personal property, and crops, $800 being paid down, $600 being secured by chattel mortgage upon the personal property, and $2,100 by a mortgage upon the real estate in the usual form; that it was the duty of the defendants to disclose to the plaintiffs that the tillable land on such farm, with the exception of six or eight acres, was so greatly run down as not to be in condition to produce any substantial crops, which fact could not be ascertained by the plaintiffs by any reasonable inspection; that the defendants in fact knew that the plaintiffs could not pay for said land, would be unable to raise or buy sustenance for the cattle and horses on the farm, and that the defendants did in fact on the 21st day of October, 1914, foreclose the chattel mortgage and take substantially all of the personal property from the plaintiffs; that proper tender was made and demand for rescission of the contract; and certain other facts were found relating to an accounting not material here.

The plaintiffs had judgment canceling and rescinding the contract, and the amount paid down by them, $800, was made a lien upon the premises, with interest from the 1st day of August, 1914, less the sum of $84.50 received by the plaintiffs from the sale of personal property.

The case was very vigorously contested. The trial commenced on January 21, 1915, and closed the next day. The parties were directed to file briefs, which they did. There was a brief for the plaintiffs, a brief for the defendants, a plaintiffs' reply brief, and a rejoinder by the defendants. On March 12, 1915, the court filed its decision in writing, stating at considerable length the facts as found by him, and directed the plaintiffs' attorneys to prepare findings in accordance therewith and submit the proposed findings to defendants' attorneys. On March 12, 1915, the judge, in transmitting a copy of his decision to the attorneys in the case, accompanied the same with a letter in which he used the following language: "All during the trial of this case I felt the utmost sympathy and compassion for the plaintiffs. My feeling for them was not greatly changed, although it was apparent *Ben* was lying whenever he saw a chance to lie." On April 26th, and before the findings were signed, the defendants made a motion requesting the court to reopen the case and take additional evidence. On June 1, 1915, there was a hearing on this motion. In disposing of the motion to reopen the case and present further testimony, the court said in its decision handed down June 5, 1915:

"I listened carefully to all the affidavits when they were read in court. Since then I have gone over the entire case and have carefully read all the affidavits."

The court carefully reviewed the matters presented on the hearing and denied defendants' motion. On June 19, 1915, defendants made a motion "to modify and supplement the findings heretofore made and filed in the above entitled action and to substitute the annexed proposed findings for those found." The motion was heard on August 7, 1915, and on the same day the court denied the motion, after carefully considering the propositions advanced by the defendants, and the findings signed as of the 5th day of June, 1915, became the findings of fact and conclusions of law in the case.

This case had the very careful and thorough consideration of

the trial judge on three separate and distinct occasions and each time the entire case became the subject of the trial court's consideration.    He approached the matter in the beginning apparently with some doubts as to his duty in the premises, but a review of the record shows that at the time he finally disposed of the matter he did so under the clear and definite conviction that his disposition was right.    We have carefully examined the evidence, and while it is not free from troublesome questions we are of the opinion that the trial court's conclusion is right, and we certainly cannot disturb the findings as contrary to the clear preponderance of the evidence.

We are urged to reverse the judgment as not supported by the findings for three reasons: (1) That the court erred in its conclusion that the facts found justified rescission.    (2) That the court erred in its conclusion that the plaintiffs had not waived the right to rescind.    (3) That the plaintiffs were not entitled to equitable relief for the reason that they testified falsely upon the trial.

Defendants argue that representations as to value or mere failure to disclose certain facts, where there is no artifice or trick used to induce reliance or prevent investigation, in the absence of a confidential or fiduciary relation between the parties, cannot constitute the basis of an action for damages for deceit or right in equity to rescission, and cite *Morgan v. Hodge,* 145 Wis. 143, 129 N. W. 1083; *Francois v. Cady L. Co.* 149 Wis. 115, 135 N. W. 484; and *Farr v. Peterson,* 91 Wis. 182, 64 N. W. 863.

1. There are two answers to this contention: (a) The court found that the plaintiffs supposed themselves to be represented by Ginsberg, a fellow countryman in whom they trusted, whereas in fact Ginsberg was the paid agent of the defendants.    This fact of itself, even if not sufficient to raise a presumption of fraud, certainly subjects the conduct of the defendants to very close scrutiny.    A fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other; and the relation and

duties involved in it need not be legal, but may be moral, so-
cial, domestic, or merely personal. *Hensan v. Cooksey,* 237
Ill. 620, 86 N. E. 1107; *Beach v. Wilton,* 244 Ill. 413, 91
N. E. 492; *Beare v. Wright,* 14 N. Dak. 26, 103 N. W. 632.
The trial court undoubtedly had this rule in mind. In the
decision preceding the formal findings the court said:

"The utter incapacity of the plaintiffs was such that no
artifice or trick was necessary and none seems to have been
resorted to. The plaintiffs trustingly placed themselves and
their $800 at the disposal of Ginsberg. Ginsberg knew this
and fraudulently landed both them and their $800."

Under such circumstances the relation of Ginsberg to the
plaintiffs was of a fiduciary character and he was bound to
speak the truth. This he did not do, and the defendants are
bound by his act.

(b) The statements made by Ginsberg, although relating
to value, the quality of the soil, the extent of the cultivated
area, and the value of the stock and crops, were not neces-
sarily for that reason merely statements of opinion. Repre-
sentations may be statements of opinion or allegations of fact
so called, depending upon the circumstances in view of which
they are made. "The mere fact that a statement takes the
form of an expression of opinion, however, is not always con-
clusive. Whenever there is any doubt as to whether it is
made as a mere expression of opinion or as a statement of
fact, the question must be determined by the jury or court."
*J. H. Clark Co. v. Rice,* 127 Wis. 451, 106 N. W. 231.

Where the statements take the form of expressions of opin-
ion, as "There was ore enough on the dump to run the mill
five years," and that "it was a high grade of ore," they are
statements of fact. " 'That there was half a million dollars
worth of ore on the dump ready to mill' is somewhat in the
nature of an expression of opinion, but not clearly so, and
when coming from the seller who was narrating what he had
seen on the property to a buyer who never saw it and had no
reasonable opportunity to see it must be considered a state-

ment of fact." *Rogers v. Rosenfeld,* 158 Wis. 285, 290, 149 N. W. 33.

"The plaintiff does not deny that he stated to Mrs. Albertz that his property was worth $14,000,—a statement made to induce her to sign the contract. Whether we regard it as a mere expression of opinion or an absolute representation of fact, it is a circumstance proper to be considered on the question of the specific performance of the contract, with the other facts in the case. The conditions were such that it had the force and effect of an express representation, so far as the rights of Mrs. Albertz are concerned." *Mulligan v. Albertz,* 103 Wis. 140, 148, 78 N. W. 1093.

"True, generally speaking, a mere opinion as to the value of property offered for sale, however extravagant, will not void the sale, if one be thereby made, on the ground of fraud. *Maltby v. Austin,* 65 Wis. 527, 27 N. W. 162; *Fowler v. McCann,* 86 Wis. 427, 56 N. W. 1085. Neither will a false representation as to future matters, or a promise to do some act in the future which the promisor does not intend to perform. *Patterson v. Wright,* 64 Wis. 289, 25 N. W. 10. The rule as to representations of value applies strictly only where the parties are dealing at arm's length and on equal terms. It does not apply where the relations between them are of a fiduciary character or of trust and confidence, or the person to whom the representations are made is incompetent to do business or knows personally nothing about the subject of the sale and is purposely induced, by the conduct of the vendor, not to inform himself but to act under the advice of such vendor and the influences by him used to that end." *Horton v. Lee,* 106 Wis. 439, 444, 82 N. W. 360.

Mere exaggerated statements by the vendor of land as to its value, and purchase by the vendee at such valuation, are not sufficient ground for rescinding the contract, where both parties had equal opportunities for ascertaining the value and there is no proof of fraudulent intent in the vendor. *Suessenguth v. Bingenheimer,* 40 Wis. 370.

Representations by the vendor of a farm that the pasturage was sufficient for twenty-five head of cattle, that the hay land grew hay sufficient to enable twenty-five head of cattle

to be kept, and that there was a cranberry marsh on the land producing ten to twelve bushels of cranberries each year, although expressions in the form of opinions, were held to be statements of fact fraudulently made with intent to deceive, and, being relied upon by the defendants, were actionable. *Brustman v. Dunn,* 161 Wis. 306, 154 N. W. 361.

In 35 L. R. A. 417, a large number of cases are cited under the title "Expressions of opinion as fraud," and in 37 L. R. A. 593, a like number of cases are quoted under the title "Right to rely upon representations made to effect contract as a basis for a charge of fraud."

The attempt to base a distinction upon the difference between an "opinion" and a "fact" has resulted in much confusion; representations in one case being held to be matters of opinion and representations in another case of exactly the same character being held to be statements of fact.    This distinction is oftentimes uncertain, indefinite, and unreal.

"In the first place no such distinction is scientifically possible.    We may in ordinary conversation roughly group off distinct domains for 'opinion' on the one hand and 'fact' or 'knowledge' on the other; but as soon as we come to analyze and define these terms for the purpose of that accuracy which is necessary in legal rulings, we find that the distinction vanishes, that a flux ensues, and that nearly everything which we choose to call 'fact' either is or may be only 'opinion' or inference. . . . This doctrine is not sustained by sound psychological or metaphysical analysis."    3 Wigmore, Evidence, § 1919.

A study of the cases suggests the thought that, in the absence of an express intent to defraud, the determination of whether or not certain representations are statements of fact or of opinion depends upon whether or not the person to whom the representations are made may, under all the facts and circumstances of the case, including such person's capacity or want of capacity, rely upon them.    Where the person to whom they are made may rely upon them they are held to be statements of fact; where the person to whom they are

made may not rely upon them, without being guilty of a want of ordinary care and prudence, they are denominated opinions. In this case the plaintiffs, in view of the fact that they supposed themselves to be represented by a friend and countryman, having no other means of ascertaining the facts with reference to the value of the property, and lulled into security by the statement of their supposed friend that he would see that they got a good deal, were clearly entitled to rely upon the statements made to them, and the representations were statements of fact and not expressions of opinion. *Morgan v. Hodge,* 145 Wis. 143, 129 N. W. 1083; *Hull v. Doheny,* 161 Wis. 27, 152 N. W. 417.

Under the established rule, the representations made were statements of fact, were false, material, and were relied upon by the plaintiffs, and they had a right to rescind the contract even though the property were worth the price paid for it. *Greiling v. Watermolen,* 128 Wis. 440, 446, 107 N. W. 339.

It is not necessary that the representations made be of such a character as to influence the conduct of a person of ordinary intelligence and prudence. "There is no such issue in an action for deceit. The sole question is whether the representations in fact deceived the party involved and materially affected his conduct. Effectiveness of deceit is to be tested by its actual influence on the person deceived, not by its probable weight with another." *Bowe v. Gage,* 127 Wis. 245, 106 N. W. 1074; *Barndt v. Frederick,* 78 Wis. 1, 47 N. W. 6; *Kaiser v. Nummerdor,* 120 Wis. 234, 97 N. W. 932.

Statements may be made in good faith, nevertheless if they are material, are relied upon by the party to whom they are made, and are false, they are actionable. *First Nat. Bank v. Hackett,* 159 Wis. 113, 149 N. W. 703.

2. The trial court was clearly right in its conclusion that the plaintiffs had not waived their right to rescind. The circumstances of the plaintiffs were such that the sale of a small part of the personal property cannot be held to be a waiver of

their right to rescind.    We do not deem further discussion on this point necessary.

3. The argument of counsel for defendants that equitable relief should be denied the plaintiffs on the ground that they testified falsely is based upon the remark of the trial judge, contained in a more or less personal letter addressed by him to counsel and accompanying his decision dated March 12th. The use of a letter of this kind for the purpose of attempting to impeach the record is, to say the least, of doubtful propriety.    Since writing the letter the court has twice reviewed the case and at its conclusion had no doubts whatever as to the correctness of the findings as signed.    This court has said:

"Probably substantially all the evidence bearing on that question was produced and it was passed upon in the findings, though not in the opinion.    The latter is of little consequence except as explanatory of the findings.    It was an unnecessary effort.    The findings which, in contemplation of the written law, were made by the trial judge, and in the opinion of the writer should always be so made in fact, must be taken as the judicial conclusion in the case both as to matters of fact and of law." *Becker v. Beaver M. Co.* 158 Wis. 471, 474, 149 N. W. 209.

If the opinion, a more or less formal document, and prepared for filing as a part of the record, is of little consequence, a chance remark of the trial judge, made in a letter transmitting a copy of the opinion, must be of still less consequence. Certainly it is not sufficient to overturn the deliberate conclusion of the court as embodied in the findings made subsequently and after twice considering the entire case.

*By the Court.*—Judgment affirmed.