SWOBODA, Appellant, vs. RUBIN and another, Respondents.

*February 7—April 29, 1919.*

*Deceit: False representations as to value of property sold: Reliance thereon, when justified: Capacity of purchaser to form judgment: Damages: Evidence: Appeal: Remanding cause for judgment.*

1. In an action based on false representations whereby plaintiff was induced to buy an interest in a corporation manufacturing knit underwear, although plaintiff participated in the taking of an inventory of the property of the company more than ten days before he parted with his money in making the purchase, findings by the jury to the effect that he did not have opportunity to observe and learn the condition and value of the machinery of the company and to find out for himself whether or not the business was profitable, and that he was justified in relying upon defendants' representations as to those matters, are *held* to be sustained by evidence showing that plaintiff had never had any experience with machinery and knew nothing about the knitting or underwear business or about books of account.

2. Opportunity to ascertain the truth of representations by the seller as to the value of property includes not only the element of time but also competency or capacity of the purchaser to form an intelligent judgment on the subject.

3. The substance of a transaction being the sale by two persons of a one-third interest in the property of a corporation controlled by them, the mere fact that they and the purchaser organized a new corporation, to which the property was transferred, said purchaser paying for one third of the stock of the new corporation, did not affect the right of the purchaser to recover damages on account of fraudulent representations, made by the sellers, which induced his purchase.

4. In an action for deceit, because of uncertainties resulting from failure to return certain exhibits with the record, the supreme court is unable to determine whether the verdict upon the question of damages is supported by the evidence; and the cause is remanded for the entry of judgment in the trial court for such damages as are sustained by the evidence, not exceeding the amount found by the jury.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Reversed.*

This is an action for damages growing out of false representations alleged to have been made by the defendants to the plaintiff, which induced him to invest $8,300 in the Racine Underwear Mills. The plaintiff was born in Austria, came to this country about thirty-two years ago, and for the last twenty-five years has been in the restaurant, saloon, and hotel business, principally in the city of Milwaukee, in which business he accumulated some money. The Racine Underwear Mills Company was a corporation organized under the laws of the state of Wisconsin in March, 1914. Its business was the manufacture of knit underwear. Its plant and principal place of business was located at Stevens Point, Wisconsin. In March, 1915, it was owned and controlled by the defendant *Braun* and one Leo. It was in serious financial difficulties. In June, 1915, *Rubin* advanced the concern $3,000, and as security took a bill of sale of all the assets and resources of the company. Later on there was assigned to him as additional security $13,300 of the capital stock of the corporation. The total capital stock thereof was $25,000. This gave *Rubin* a controlling interest in the corporation and thereafter he was the dominating spirit therein.

In July, 1915, the plant was moved to Milwaukee. This required more money, which was advanced by *Rubin*. After the plant resumed operations in Milwaukee it was still in financial straits, and *Rubin* determined to get more capital for the concern. On or about October 9, 1915, the plaintiff and *Rubin* met. *Rubin* told *Swoboda* he heard that he wanted to go into business. He answered that he did if it was a good business. *Rubin* then said I have one, the Racine Underwear Mills, a good profitable business, and I need a good responsible man in the office. Upon plaintiff asking how much money was needed *Rubin* answered that that was not the question. What he wanted was a good responsible man and he knew plaintiff was such a man. Plaintiff told him he knew nothing about the business, and *Rubin* replied that it was not necessary; that it was a very profitable busi-

ness; that the money was not the prime consideration; that he *(Rubin)* was the financier and owned the whole thing. After some further talk and an inspection of the plant an inventory was taken, either the same day, or very shortly thereafter.   *Braun* and *Swoboda* were present at the taking of the inventory, and *Rubin* was there a considerable portion of the time.   The principal items of the inventory consisted of yarn and machinery.   The yarn was weighed up and the value thereof set down.   The machinery was valued at the prices fixed therefor in a catalogue of the manufacturer of the machinery issued in the year 1913.   The evidence tends to show that both *Rubin* and *Braun* assured plaintiff that the machinery was as good as new.   The machinery was inventoried at $15,265.51 and the yarn at $4,390.18.   By this inventory the entire value of the plant was fixed at $23,500, but what items were included in this total outside of the yarn and machinery does not appear.   It is reasonably certain that a considerable sum was allowed for good will.

It was then arranged to organize another corporation, with a capital stock of $25,000, of which *Swoboda, Rubin,* and *Braun* should each take $8,300, leaving $100 of the stock in the treasury, to which the property of the old corporation should be transferred at the inventoried value.   Articles of incorporation were drawn up and filed, and on October 22d the three met and organized the corporation.   *Swoboda* drew and delivered his check to the corporation for $8,300. *Rubin* and *Braun,* in form at least, did likewise.   These checks were deposited in the Union Bank, of which *Rubin* was a director.   *Rubin,* by bill of sale, conveyed to the new corporation all the property and effects of the old corporation, and a check for $23,350 upon the deposits so made in the Union Bank was immediately delivered to *Rubin* in payment thereof.   This left the corporation a checking account of about $1,500.   It appeared that there were outstanding debts of the old organization amounting to $6,750 for which *Rubin*

was liable, and which were paid out of the $23,350 above mentioned, all of which was unknown to the plaintiff.

*Rubin, Braun,* and *Swoboda* were elected directors. *Rubin* was elected president, *Braun* secretary, and *Swoboda* treasurer. *Swoboda* was given a desk and charged with the somewhat responsible duties of copying orders and signing checks. *Braun* went out on the road soliciting orders. Things went badly from the start. Orders filled were returned because unsatisfactory. The bank account was continually overdrawn. *Swoboda* was asked to sign notes to secure money for the concern, one of which for $1,000 he signed. The machinery worked badly, resulting in a poor product. The employees left. Credit was refused. Plaintiff demanded that his money be returned. At a stockholders' meeting on January 10, 1916, plaintiff was removed as a director. In March, 1916, *Rubin* sold his interest at par and severed his connection with the corporation. In July, 1916, the corporation went into bankruptcy. This action was brought to recover damages because of the false and fraudulent representations of the defendants which induced plaintiff to invest his money, as recited.

The jury returned a special verdict to the effect (1) that prior to October 22, 1915, the defendants, and both of them, represented to the plaintiff (a) that the Racine Underwear Mills was doing a good and profitable business; (b) that the machinery of the Racine Underwear Mills was as good as new machinery; (c) that the true value of the equipment, stock, fixtures, machinery, and good will of the Racine Underwear Mills was $23,350; (2) that such representations were false and fraudulent and made with the intent to induce plaintiff to buy stock in the Racine Underwear Mills; (3) that the plaintiff believed such representations; (4) that the plaintiff relied upon such representations and was thereby induced to purchase stock of the Racine Underwear Mills; (5) that the plaintiff did not have opportunity to observe and

learn the condition and value of the machinery of the Racine Underwear Mills prior to October 22, 1915, or as to whether or not the business of the Racine Underwear Mills was profitable; (6) that the plaintiff was justified in relying upon said representations and in accepting such representations as true, without doing more than the evidence in the case indicates he did do to ascertain the truth or falsity of such representations; and (7) fixed his damages at the sum of $6,750.

The court held that the plaintiff did have opportunity to learn the condition and value of the machinery of the Racine Underwear Mills and as to whether or not its business was profitable prior to October 22, 1915, and that the plaintiff was not justified in relying upon such representations, reversed the findings of the jury in such respects, and ordered judgment in favor of the defendants dismissing the complaint.    From the judgment so entered plaintiff appealed.

For the appellant there was a brief by *Umbreit, Mahon. & Jenner,* attorneys, and *A. C. Umbreit,* of counsel, all of Milwaukee, and oral argument by *A. C. Umbreit.*

For the respondent *Rubin* there was a brief by *McGovern, Hannan, Devos & Reiss,* attorneys, and *George C. Dutcher,* of counsel, all of Milwaukee; and the cause was argued orally by *Mr. Timothy J. Hannan* and *Mr. Dutcher.*

The following opinion was filed March 4, 1919:

OWEN, J.    In the case of *Karls v. Drake,* 168 Wis. 372, 170 N. W. 248, recently decided by this court, following *Miranovitz v. Gee,* 163 Wis. 246, 157 N. W. 790, it was held that, in the absence of an express intent to defraud, the determination of whether or not, certain representations are statements of facts or of opinion depends upon whether or not the person to whom the representations are made may, under all the facts and circumstances of the case, including such person's capacity or want of capacity, rely upon them. Where the person to whom they are made may rely upon them, they are held to be statements of fact.    Where the per-

son to whom they are made may not rely upon them without being guilty of a want of ordinary care and prudence, they are denominated opinions. It was also there held that whenever there is any doubt as to whether a statement of this kind is the mere expression of an opinion or that of a fact, it must be determined by the jury or court. See, also, upon this point, *J. H. Clark Co. v. Rice,* 127 Wis. 451, at page 465, 106 N. W. 231, and cases there cited. It was also held in *Karls v. Drake, supra,* that a finding of the jury to the effect that, under all the circumstances of the case, the plaintiff was justified in relying upon the representations made, was equivalent to a finding that the statement or representation made was a representation of a fact. In the instant case the special verdict of the jury finds in plaintiff's favor all facts essential to his recovery, and it remains but to ascertain whether the findings of the jury are sustained by the evidence.

The trial court was of the opinion that the finding of the jury to the effect that the plaintiff did not have opportunity to observe and learn the condition and value of the machinery of the Racine Underwear Mills and to find out for himself whether or not the business of the Racine Underwear Mills was profitable, was not sustained by the evidence. It appears from its opinion that it was induced to this conclusion by reason of the fact that *Swoboda* participated in the taking of the inventory, and that he had plenty of opportunity between that time and October 22d, when he parted with his money, to advise himself concerning the value of the assets of the concern and upon the question of whether the business thereof was profitable or otherwise. In the argument respondents' attorney contended that if there ever was a case where a purchaser had an opportunity to advise himself concerning the value of that which he was purchasing, this was the case. So far as the element of time was concerned, the contention is conceded. But opportunity to ascertain the truth of representations such as those forming the basis of

this action contemplates something besides the element of time.   It contemplates competency on the part of the purchaser to form an intelligent judgment of his own upon such questions.

"It is the settled doctrine of English and American law that the purchaser is required to notice such qualities of the goods purchased as are reasonably supposed to be within the reach of his observation and judgment."   Bouv. Law Dict. (Rawle's 3d Rev.) 438.

In formulating the rule in *Miranovitz v. Gee, supra*, by which certain representations are determined to be statements of fact or expressions of opinion, the capacity or want of capacity of the person relying upon them is made an essential consideration.   It is true that the purchaser must exercise such faculties as he has for his protection.   He cannot close his eyes to the obvious, nor stifle his judgment of matters within his capacity to judge.   In fact, he must be alert, careful, and cautious.   He must employ his powers of observation and apply his experience and knowledge in his efforts to ascertain the facts and to form an intelligent judgment upon the character and value of the subject of his purchase.   But one who is not equipped to form an intelligent judgment with reference thereto, or to deal at arm's length with his adversary, is not forbidden to do business.   In many of the transactions of life purchasers must rely upon the representations of sellers concerning value, for we all at times indulge in purchases concerning the values of which we are wholly uninformed.   If under such circumstances sellers were not held to their representations concerning values, the law would license deceit and reward dishonesty.

*Swoboda* was a man who had never had any experience with machinery, especially knitting machinery.   He was equally innocent concerning the knitting or underwear business.   He was utterly without experience concerning books of account, and such examinations as he could have made of the books of the concern would have revealed nothing to him.

He had no knowledge upon those matters and, consequently, could exercise no judgment with reference thereto. This was known to the defendants. Because of *Swoboda's* lack of knowledge upon the subjects of these representations the jury was entirely justified in finding as it did, and its verdict should not have been disturbed. Our conclusion is that the trial court erroneously interfered with the verdict of the jury, and that it should have rendered judgment in favor of the plaintiff for such damages as were justified by the evidence.

We do not consider the intervention of the new corporation as changing the substantial nature of the transaction, which was a sale to *Swoboda* by *Rubin* and *Braun* of a one-third interest in the property transferred. We say this because the trial court in its opinion intimated that the result might have been different if the action had been by the corporation instead of the plaintiff. The direct result of this transaction was the defrauding of *Swoboda* by *Rubin* and *Braun*. Their destination was as certainly reached, notwithstanding their circuitous route, as though the sale had been made direct to him and not through the intervention of a corporation.

It is vigorously contended that the evidence does not sustain the damages fixed by the jury. *Swoboda* should recover the difference between the market value of the property transferred and its value as represented. Whatever was transferred was represented to be of the value of $23,350. We know of only two items entering into this total, namely, machinery inventoried at $15,260 and yarn inventoried at $4,390. A copy of the inventory was used upon the trial, but not returned to this court, so that we are unable to ascertain all the items that went to make up the total. One of plaintiff's witnesses testified that the machinery, valued at $15,260, was not worth more than $5,000. If believed by the jury, and it apparently was, this justifies a reduction of $10,260 from the inventoried price. We also gather, in a

general way, from the record that some value was placed on good will. Whatever that value was, the jury was entitled to disregard it altogether, and evidently did.

Appellant's attorneys also contend that debts of the old concern were paid by the new concern. We cannot verify this by the record. There were some. eleven checks offered, as exhibits, in evidence which, it would appear, were for the payment of the debts of the old concern. These exhibits, however, were not returned with the record, and we cannot tell whether these were checks of the new corporation or *Rubin's* individual checks. Because of these uncertainties appearing from the record, and because the trial court has not passed upon the question, we feel that we are not in a position to pass upon the question as to whether the verdict of the jury upon the question of damages is supported by the evidence, and that the case should be remanded with instructions to enter judgment in favor of the plaintiff for such amount as may be sustained by the evidence, not exceeding, of course, the amount found by the jury.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of the plaintiff for such damages as are sustained by the evidence, not exceeding the amount found by the jury.

A motion for a rehearing was denied, with $25 costs, on April 29, 1919.