SCHULTZ, Respondent, vs. ANDREWS & COMPANY, Appellant.

*June 3—June 23, 1920.*

*Corporations: Sale of corporate stock: Representation as to value by seller: Reliance on statement by purchaser: Rescission of contract: Explanation of delay: Evidence: Proof of market value of stock: Pleading: Inconsistent causes of action: Waiver of objection by failure to demur.*

1. In an action to recover the purchase price of corporate stock alleged to have been sold under false representations, a statement by the seller that the stock was sold at $8 a share in order to make future business friends, when it was worth $13.50 per share on the Chicago market, is *held,* in view of the circumstances, one upon which the purchaser was entitled to rely.
2. Where it appeared that the purchaser did not rescind the contract of purchase for five months, evidence that the conduct of the seller was a continuing tacit assurance that the stock could be resold at a profit made it a jury question as to whether plaintiff acted with reasonable promptness.
3. Testimony of defendant's manager that the market was what defendant made it, is sufficient to relieve plaintiff from the burden of proving the value of the stock on the market at the time of the purchase.
4. Where the complaint set forth one cause of action for damages for fraudulent representation and another for recovery of money paid after rescission of the contract, failure of defendant to demur is a waiver of the objection that the causes of action are inconsistent.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Action to recover money, paid upon the purchase of corporate stock, upon rescission because of fraudulent repre-

sentations. The defendant is a corporation engaged in the buying and selling of stocks and bonds and at all times hereinafter mentioned had an office in the city of Milwaukee. Plaintiff lived at Cato, Wisconsin. On October 26, 1917, the manager of the defendant at Milwaukee called plaintiff on the telephone and solicited him for the purchase of corporate stock of the Empire Tire & Rubber Company. He offered to sell it to him for $8 per share and represented, according to plaintiff's claim, that it was worth $13.50 on the Chicago market; that the stock was offered at $8 in order to make future business friends; that the purchase of 212 shares of stock would require a cash payment of $696, and that the balance need not be paid for ninety days, at which time the stock could be sold at a nice profit. In other words, according to plaintiff's contention, in order to induce him to purchase the stock at $8 a share it was represented that it was worth $13.50 on the Chicago market on that day, and the defendant guaranteed that it could be disposed of inside of ninety days at a profit. Plaintiff purchased the 212 shares, paid $696 therefor, and a few days later took thirteen shares more, so that he had a block of 225 shares. On the 13th day of November plaintiff wrote the defendant stating that he had received information from Chicago that the stock was listed for sale at $4 per share. The defendant replied that if such was the fact it was probably because a brokerage house in Chicago had been able to pick up a small block of the stock from some client who was in need of money and sacrificed his stock to get it; that defendant was the underwriter of the issue and had full control of it and that no considerable block of the stock could be purchased at any such figure, and stated further that

. "They are simply using this as a leader, and we feel quite sure that you will never regret having taken on this stock at the $8 figure, as we firmly believe that it is one of the greatest issues that we have ever handled, and we are using

it as a stepping stone to future business with our new clients."

On January 28, 1918, plaintiff wrote defendant as follows:

"If there is any possibility for you to fulfil your promise, that is to sell my stock at a profit. If you can do this I will have more confidence in your ability, and would be willing to gamble a little more on your advice."

To which the defendant replied:

"I am in receipt of your letter of January 28th and beg to say that we have made note of your order to sell 225 shares of Empire Tire & Rubber Corporation common stock at $8.50 per share. As soon as we are able to move the stock at the above figure we will be very glad to notify you."

Nothing further occurred until April 6, 1918, when plaintiff's attorneys wrote defendant that plaintiff rescinded the contract of purchase because of fraudulent representations and demanded the return of the $696 paid upon the stock. Thereafter this action was commenced.

The complaint sets up two causes of action, one to recover the $696 by treating the contract as rescinded, and the other to recover the difference between the actual value and the represented value of the stock.

The case was tried before a jury and the following special verdict was returned: (1) That on October 26, 1917, the defendant by its agent, Henry P. Dinter, represented to the plaintiff that each share of the stock of the corporation known as the Empire Tire & Rubber Corporation was on that day of the value of $13 in the market; (2) that that representation was made to the plaintiff by said agent as the statement of a fact and not merely as an opinion relating to the value of said stock; (3) that said representation was false; (4) that the representation was made by said agent for the purpose of inducing the plaintiff to buy from the defendant 212 shares of said stock;

(5) that in buying said 212 shares of stock from defendant the plaintiff relied on said representation as being true; (6) that the plaintiff was induced by said representation to purchase said 212 shares of stock from defendant; (7) that in relying upon said representation the plaintiff did not fail to exercise ordinary care; (8) that the value per share of said stock in the market at each of the following dates, namely, October 26, 1917, January 26, 1918, and January 28, 1919, was: October 26, 1917, $4 per share; January 26, 1918, $3.50 per share; and January 28, 1919, $2.75 per share; (9) that the plaintiff notified the defendant within a reasonable time that he elected to rescind the contract for the sale of said stock; (10) that on October 26, 1917, the said defendant by its said agent agreed with the plaintiff that if he would purchase from defendant said 212 shares of stock the defendant would resell the same for the plaintiff within ninety days after that date at a sum exceeding $8 per share; and (11) that on November 5, 1917, said defendant by its said agent agreed with plaintiff that if he would purchase from the defendant thirteen additional shares of said stock the defendant would resell the same for the plaintiff within ninety days after October 26, 1917, at a sum exceeding $8 per share. On this verdict judgment was rendered in favor of the plaintiff and against the defendant for $696, from which judgment defendant brings this appeal.

For the appellant there was a brief by *Nash & Nash* of Manitowoc and *Samuel Shaw Parks* of Chicago, and oral argument by *Mr. Parks.*

For the respondent there was a brief by *Hougen, Brady & Meyer* of Manitowoc, and oral argument by *A. L. Hougen.*

OWEN, J.    Unless the verdict is unsupported by the evidence or tainted with error it supports the judgment. *Miranovitz v. Gee,* 163 Wis. 246, 157 N. W. 790; *Karls v. Drake,* 168 Wis. 372, 170 N. W. 248; *Swoboda v. Rubin,*

169 Wis. 162, 170 N. W. 955.    We have had some doubt
as to whether the plaintiff was justified in relying upon the
representation that the stock was worth $13.50 per share
on the Chicago market upon the day of its purchase.    With-
out any explanation, the statement would seem sufficient to
put the most credulous upon inquiry.    According to the
testimony of plaintiff, however, he asked why defendant
was not selling it on the Chicago market instead of offering
it to him at $8 if the fact was as represented, to which the
defendant's manager replied that they had the stock, which
they were able to sell at $8 per share, and that they were
using it for the purpose of making future business friends.
The jury evidently accepted this explanation, and by its
answer to the seventh question found, in effect, that plaint-
iff was entitled to rely thereon.    In view of the fact that
business concerns customarily expend large sums of money
in advertising, and otherwise, for the purpose of extending
their business and increasing their business acquaintances
and friendships, we cannot say that the finding of the jury
in this respect was not justified.    While the circumstance
is rather unusual, we cannot say that the plaintiff was not
warranted in accepting, and relying upon, the assurance
that the prospect of future business was the motive which
prompted the defendant to sell the stock to him at $8 per
share.

It is to be noted, also, that plaintiff did not rescind the
contract of purchase until April 6, 1918, more than five
months after the contract of purchase was made.    It is
claimed by the appellant that plaintiff's letter to it under date
of November 13th indicates that he had discovered the
falsity of the representations on that date, and that he should
promptly have rescinded upon the discovery of the fraudu-
lent representations, and that a rescission on April 6th fol-
lowing was too late as a matter of law.    Ordinarily this
would be true, but we think the following circumstances
make the question of whether he acted with reasonable

promptness one for the jury: First, there is the reply of the defendant to plaintiff's communication of November 13th. In this letter it gave him assurance that if there were any instances of sales of the stock at $4 per share they were isolated ones and the result of financial necessities. The letter, taken as a whole, was very reassuring and was well calculated to impress the plaintiff with the thought that his information was erroneous, and that, after all, his stock was as represented. Then, too, it is to be remembered that *Andrews & Company* guaranteed that at the expiration of ninety days the stock could be sold at a nice profit. In reliance upon this feature of the contract, plaintiff, on the 28th day of January, requested *Andrews & Company* to make sale of the stock, and on January 30th they notified him that they had noted his order for sale of the stock at $8.50 per share. While their communication did not give him assurance of a speedy sale, neither was there any intimation of the hopelessness thereof. The act of the defendant in listing the stock for sale at $8.50 justified the plaintiff in awaiting their further advices in the matter and relieved him from taking immediate action in the nature of a rescission. In fact, there is no evidence that at that time plaintiff knew the facts concerning the real value of the stock, but, on the contrary, it tends to show that he was still relying upon the assurances given him and the representations made to him by the defendant. At no time between January 30th and April 6th did defendant advise plaintiff that a sale of the stock for $8.50 could not be secured. This conduct on the part of the defendant was really a continuing, tacit assurance on its part that the stock could be disposed of at a profit. This is especially true in view of the fact that the defendant made no demand for the payment of the balance due on the stock, which became due ninety days from the date of the contract of purchase. Under these circumstances, we think it was for the jury to say whether plaintiff acted with reasonable promptness in rescinding the

contract of purchase, and its finding in this respect cannot
be disturbed.

Appellant makes the further point that the plaintiff failed
to prove that the stock was not worth $13.50 on the Chicago
market on October 29, 1917. It is true that there is no
evidence in the case showing the value of the stock on the
Chicago market on that day. The deposition of the de-
fendant's Milwaukee manager, however, was taken other-
wise than as a witness under the provisions of sec. 4096,
Stats., and read in evidence. He testified that in October,
1917, he was manager of the defendant's office at Cleveland;
that the market for the Empire Tire & Rubber Company
stock was made through defendant's sales of it. The
market was running at their asked price in October, 1917,
from $7.50 to $8 and that to his knowledge the highest
price paid for this stock up to October 29, 1917, was $9.
In view of this testimony of the manager of the defendant's
Milwaukee office, we think it was unnecessary for plaintiff
to prove the value of the stock on the Chicago market on the
day of purchase. It appears from his testimony that the
market was what *Andrews & Company* made it, and that
up to the day of the contract of purchase it had not been
above $9 anywhere. If the defendant was prejudiced by
this testimony it was within its power to show what the
value of the stock was on the Chicago market on the day
in question. This it failed to do, and the inference is irre-
sistible that it was neither $13 nor $13.50.

Appellant further asserts that there is no evidence in the
case to show that the stock was represented to be of the
value of $13 on the Chicago market, and it points out that
the evidence of the plaintiff is to the effect that it was repre-
sented to be $13.50. The plaintiff did so testify. The
allegation of the complaint, however, is to the effect that it
was represented to be of the value of $13. In view of
this allegation of the complaint the court inserted the sum
of $13 in the first question of the special verdict instead of

$13.50, and explained to the jury his reasons for doing so and told them to answer the first question "Yes" if they found that the representation was made that the stock was selling on the Chicago market at either $13 or $13.50. There is nothing substantial to this contention of appellant.

As mentioned in the statement of facts, the complaint sets forth two causes of action: one for damages because of the fraudulent representation, and the other for the recovery of the money paid, upon rescission of the contract. At the close of the evidence the defendant moved that the plaintiff be required to elect upon which issue he would go to the jury. The court denied the motion. This is assigned as error. It is true that the two causes of action are inconsistent, because one treats the contract as an existing one and the other treats it as having been rescinded and nonexistent. This was urged upon the lower court as ground for a new trial, and the learned trial judge pointed out that the objection should have been raised by demurrer to the complaint and that it was waived by failure to demur. This disposition of the matter is sustained by the plain provisions of the statutes. See secs. 2649, 2654, Stats.

Error is assigned by appellant because of failure to give instructions requested and the giving of instructions excepted to. We fail to find any error in such respect, and it seems unnecessary to treat such assignments in detail. We find no reversible error, from which it results that the judgment should be affirmed.

*By the Court.*—Judgment affirmed.