GRAFF and wife, Respondents, vs. TINKHAM, Appellant.

*April 28—June 23, 1930.*

144

For the appellant there was a brief by *Robert H. Gollmar* and *Grotophorst, Quale & Langer*, all of Baraboo, and oral argument by *Mr. H. M. Langer* and *Mr. Gollmar*.

For the respondents there was a brief by *Hill, Beckwith, MacIntyre & Harrington* of Madison, and oral argument by *John Harrington*.

FAIRCHILD, J. A new trial must be granted. Much of the evidence introduced related to conditions as they were long after the transactions complained of and after difficulties, over which the defendant could exercise no control, had visited themselves upon the enterprise. The plaintiffs were permitted to introduce testimony, over defendant's objection, of conversations in West Virginia at which neither plaintiffs nor defendant were present, tending to show that

representations similar to those charged against defendant had been made by Mr. Barrett to the witness Huber.

The plaintiff Charles W. Graff was asked about another purchase of stock through the defendant, in no way connected with the transaction in question here, and over defendant's objection was permitted to answer this question: "Q. After Mr. Tinkham sold you Coal River Collieries stock, state whether or not he sold you any other stock that was worthless. A. He did." This question was objectionable. It introduced an issue with which the case ought not to have been burdened and beclouded. To permit proof of independent transactions which may involve collateral charges, not in issue or already involved in the controversy, is prejudicial. *Standard Mfg. Co. v. Slot,* 121 Wis. 14, 98 N. W. 923; *J. H. Clark Co. v. Rice,* 127 Wis. 451, 106 N. W. 231.

Objection was made to testimony of the witness Huber, who had purchased four shares of the stock in the same company in 1921, when he was asked whether or not at the time any representation was made by any officer or director of the Coal River Collieries as to whether or not it was a Brotherhood of Locomotive Engineers' project, and he was permitted to answer that such representations had been made in correspondence by Warren S. Stone and W. B. Prenter. These representations could not have induced the plaintiffs to buy the stock; they were not the representations of the defendant and could have no effect except to prejudice the defendant. Mr. Huber, in 1927, became a director of the Coal River Collieries and was permitted to testify to the grade of coal produced several years before, although his testimony fails to reveal any substantial familiarity with it. He also testified that after an examination of the prospectus and looking into the value of the stock he could not recommend it as a sound investment. He did not disclose any

fact acquired in his examination determining or throwing light on the value of the stock at or about the time plaintiffs made their purchases. His opinion formed after reading the prospectus was not evidence of value or of whether or not the investment was sound, and the objection should have been sustained.

Further objection was made to the testimony tending to show that application for permit to sell stock in Illinois had not been granted; also to testimony with reference to the organization of the De Laporte Coal Corporation; to the report submitted in a receivership proceeding, and to a circular letter dated April 27, 1923. The record does not disclose that this testimony tends to reproduce the picture of the conditions involved in this action. The defendant could hardly be held responsible for proper and efficient management of the affairs of the company forever. When the plaintiffs became stockholders they took on themselves the responsibilities that stockholders have and which go with an interest in the conduct and management of their property. This testimony was objectionable. There must exist some reasonable, open and visible connection between proposed testimony and the circumstances of the situation in which the plaintiffs and defendant were dealing. 1 Jones, Commentaries on Evidence (2d ed.) § 137. The plaintiffs knew they were entering into a new enterprise; that the money they were investing was to be used for development purposes.

The amount of the damages fixed by the jury is based on the following testimony given by the plaintiff, Charles Graff:

"*Q.* State whether or not, in your opinion, Mr. Graff, this stock at the time it was sold to you or at any time after that was worth anything or not. *A.* I considered that it was worth $100 when I bought it.

"*Q.* That is, you thought it was when you bought it? *A.* Yes.

"*Q.* It isn't that. Tell us what it actually was worth in your opinion? (Objection interposed and overruled.) "*Q.* If anything? Do you understand the question? *A.* Yes. ₌ Did he say answer? *Q.* Yes. *A.* My opinion now would be that it would not be worth a nickel, because I would not get anything for it."

It is a rule that the owner of property is usually allowed to give his opinion of its value; but evidence given under this rule, which suggests an amount adopted by the jury, will not sustain a verdict if it is clearly based on guess and conjecture, or is arbitrary and delusive. If the witness was trying to fix the value of the stock at the time of purchase, he has disclosed the uselessness of his estimate, for he bases his opinion on a condition of affairs five or six years after the stock was purchased, and after a strike, falling prices, and a period of business depression appear to have affected the affairs of the corporation. Either the value fixed or the condition on which he based his estimate is too remote and dissociated from the transaction between plaintiffs and defendant to be capable of portraying the value of the stock at or about the time it was purchased.

The plaintiffs offered in evidence a newspaper article written by defendant in October, 1922, and the defendant urges this was improperly admitted. This article contains statements similar in nature to those charged in the complaint as false representations. The article was offered as impeaching testimony and is not so dissociated from the issues made by the pleadings and from the testimony given by defendant as to be improper. We shall not attempt to state further the exceptions to rulings on evidence made upon the trial.

The statements made as to the Coal River Collieries company being a Brotherhood enterprise and that the stock was

a sound investment are challenged as not being material representations of existing facts. The representation to a prospective purchaser of stock in a corporation that an organization as strong as the Brotherhood of Locomotive Engineers was sponsoring it would be influential as an inducement to buy and might, if true, have some effect on the market value of such stock. True, it adds nothing to the assets of the concern and it is generally understood that strong combinations cannot always make an enterprise successful, but the confidence of those familiar with such an organization would be given more readily and would thus naturally be reflected in the market for such stock. The active interest of men who were officers of the Brotherhood appears, but no ownership or responsibility was assumed by the organization. In so far as the representation would affect the price of the stock it ought to be considered. A representation is not fraudulent unless made by one having knowledge of its falsity or made recklessly as true when he did not know it to be true. It is important to inquire whether or not the person to whom the representation was made, under all the facts and circumstances of the case, did rely upon it. The questions submitted to the jury did not fully cover this. The evidence shows that when the plaintiffs and defendant first talked about the stock the defendant had circulars and read from them. Upon the retrial of this case there should be a determination of whether or not there was such an adoption of their substance by the defendant as to constitute a representation of the truth thereof by him. If the defendant disclosed the source of his information and had no knowledge of the falsity of such information, or, not knowing it to be true, did not fraudulently or recklessly make the representation that it was true, or if both parties were equally informed, then the defendant would not be liable. *Miranovitz v. Gee,* 163 Wis. 246, 157 N. W. 790; *J. H. Clark Co. v. Rice,* 127 Wis. 451, 106 N. W. 231.

The representation that the stock was a sound investment may be said, under the evidence in this case, to verge closely upon the expression of opinion; but a doubt existing, it ought to be determined by the jury. In *Swoboda v. Rubin,* 169 Wis. 162, 170 N. W. 955, the court said:

"In the case of *Karls v. Drake,* 168 Wis. 372, 170 N. W. 248, recently decided by this court, following *Miranovitz v. Gee,* 163 Wis. 246, 157 N. W. 790, it was held that, in the absence of an express intent to defraud, the determination of whether or not certain representations are statements of fact or of opinion depends upon whether or not the person to whom the representations are made may, under all the facts and circumstances of the case, including such person's capacity or want of capacity, rely upon them. Where the person to whom they are made may rely upon them they are held to be statements of fact; but where the person to whom they are made may not rely upon them without being guilty of a want of ordinary care and prudence, they are denominated opinions."

It was there held that whenever there is any doubt as to whether a statement of this kind is a mere expression of opinion or statement of fact, it must be determined by the jury or court.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial as to the ten shares.