JESSE, as general guardian, Respondent, vs. TINKHAM, Appellant.

*November 11, 1931—February 9, 1932.*

For the appellant there were briefs by *Grotophorst, Quale & Langer* of Baraboo, and oral argument by *H. M. Langer.*

For the respondent there were briefs by *Hill, Beckwith & Harrington* of Madison, and oral argument by *John T. Harrington.*

The following opinion was filed December 8, 1931:

FRITZ, J. This action is against the same defendant and in relation to the sale of stock of the same corporation, viz. Coal River Collieries, as in the case of *Graff v. Tinkham,* 202 Wis. 141, 231 N. W. 593. It is undisputed that on January 17, 1922, plaintiff bought thirty shares of that stock for $3,000, and for that amount gave defendant a draft, which defendant forwarded to the Coal River Collieries. No dividends were ever paid to plaintiff, and a receiver was appointed for the corporation in 1927. Then plaintiff sued defendant to recover damages, amounting to $3,000, alleged to have been sustained by reason of fraudulent misrepresentations made on January 17, 1922, by defendant to plaintiff to induce him to purchase the stock.

Upon conflicting evidence the jury found the facts to be as follows: To induce plaintiff to purchase the stock, defendant represented that the Coal River Collieries was a Brotherhood of Locomotive Engineers enterprise (which was admitted to be untrue) ; and that plaintiff relied on that representation. Defendant also represented that the stock was a safe and sound investment; that he made that representation as a statement of fact; that that representation was false; that plaintiff relied on that representation; and that plaintiff would not, by the exercise of ordinary care, have discovered the falsity of that representation. Defendant also repre-

sented that the Coal River Collieries had one mine operating and producing 250 tons daily; that that was true; and that plaintiff relied on that representation. The jury assessed plaintiff's damages at $1,250. By motions for nonsuit, and after the verdict, defendant challenged, as he does also on this appeal, the sufficiency of the evidence to warrant the jury in making those findings, excepting the finding as to the truth of the representation as to the Coal River Collieries having one mine in operation. A review of the evidence discloses that it presented issues for the jury as to all matters which were submitted; that, so far as the evidence which was admitted is concerned, it was within the province of the jury to find as it did; and that it would have been proper for the trial court to sustain and thereby approve of the jury's findings but for the following erroneous rulings on the admissibility of certain evidence.

On cross-examination of plaintiff he testified that he had purchased other common stock prior to his purchase of the stock involved in this action. Thereupon, for the purpose of showing plaintiff's knowledge because of his experiences with other stocks, defendant's counsel sought to cross-examine as to what stocks plaintiff had purchased; whether he had purchased any on which he had not received any dividends; whether he had followed market quotations of stock. The court sustained plaintiff's objections to testimony on those subjects, and announced that as the ruling all the way through on defendant's offer of testimony along that line. Those rulings constituted prejudicial error in this case. To entitle plaintiff to recover at all, he must have relied upon and must have been induced by the false representations to purchase the stock (*International Milling Co. v. Priem,* 179 Wis. 622, 624, 192 N. W. 68); the attending circumstances must have been such that he would not, by the exercise of ordinary care, have discovered the falsity of the repre-

sentation (*Jacobsen v. Whitely*, 138 Wis. 434, 437, 120 N. W. 285; *Sievers v. Fuller*, 181 Wis. 120, 124, 193 N. W. 1002) ; and whether the representation that the stock was a safe and sound investment was a statement of fact or of opinion depended, among other circumstances, upon whether or not plaintiff might rely thereon in view of his mental capacity or lack of capacity (*Miranovitz v. Gee*, 163 Wis. 246, 157 N. W. 790; *Karls v. Drake*, 168 Wis. 372, 170 N. W. 248; *Swoboda v. Rubin*, 169 Wis. 162, 170 N. W. 955).

Whether plaintiff was warranted in accepting that representation as a statement of fact, whether he relied upon any of the representations or was induced thereby to purchase, and whether he would, in the exercise of ordinary care, have discovered the falsity of the representation, were all issues which were to be determined in the light of plaintiff's intelligence and experience. As this court said in *Miranovitz v. Gee, supra:*

"It is not necessary that the representations made be of such a character as to influence the conduct of a person of ordinary intelligence and prudence. 'There is no such issue in an action for deceit. The sole question is whether the representations in fact deceived the party involved and materially affected his conduct. Effectiveness of deceit is to be tested by its actual influence on the person deceived, not by its probable weight with another.' *Bowe v. Gage*, 127 Wis. 245, 106 N. W. 1074; *Barndt v. Frederick*, 78 Wis. 1, 47 N. W. 6; *Kaiser v. Nummerdor*, 120 Wis. 234, 97 N. W. 932." (Page 256.)

See, also, *Becker v. Spalinger*, 174 Wis. 443, 183 N. W. 173; *International Milling Co. v. Priem, supra.*

Manifestly, testimony as to plaintiff's prior experiences and knowledge in relation to corporate stock was material and relevant, and should not have been excluded in view of its direct bearing upon some of the crucial issues.

On the other hand, plaintiff's counsel, realizing the materiality of evidence bearing on plaintiff's mental capacity on January 17, 1922, for the ostensible purpose of showing plaintiff's mental instability and lack of capacity, was permitted by the court, notwithstanding defendant's objection, to introduce considerable testimony of plaintiff and plaintiff's wife as to severe and gruesome injuries sustained by plaintiff in a railroad wreck in July, 1921, and his intense suffering and mental distress during the six months which preceded the stock purchase on January 17, 1922. Although it was proper for plaintiff to prove his lack of mental capacity and stability on January 17, 1922, in so far as such proof had some bearing on whether plaintiff was in condition to investigate as to the actual value of the stock, or induced to purchase by reason of defendant's representations, and relied thereon, nevertheless, until defendant undertook by proof to contradict or minimize plaintiff's showing as to his condition on or about January 17, 1922, there was no occasion for plaintiff's injecting into the trial the circumstances of his shocking injuries, and the depressing history of his sufferings and treatment for six months preceding January 17, 1922. It was error to admit that testimony, and it was undoubtedly prejudicial to defendant.

Because of those errors, and the direct bearing of the proof, to which they related, upon the most important issues on the trial, the defendant is entitled to a new trial. He has also assigned errors in several other respects, all of which have been reviewed. None of them were prejudicial. Reference will be made only to those which are considered most important in the event of another trial. Five photostatic copies of corporate reports, duly filed by the Coal River Collieries in the office of the state auditor of West Virginia, were received in evidence over defendant's objections, although they were not authenticated by official certificates in compliance with either secs. 327.08 and 327.18, Wis. Stats.,

or sec. 906 of ch. 17, title XIII, U. S. Rev. Stats. However, in connection with those copies, there was introduced the testimony of the official custodian of the original reports; and as to all of them, with the exception of reports filed in May and June, 1921, he testified that he had compared the photostatic copies with the originals and that they were true and correct copies. That testimony constituted the copies, thus found to be true and correct, sworn copies and rendered them admissible without the statutory certificates. Jones, Evidence, secs. 521, 527, 535, and 536. However, there was no testimony that any comparison had been made of the copy of the report filed in May, 1921, or that upon the comparison of the copy of the report filed in June, 1921, that copy had been found to be true and correct. Hence those copies were not admissible. However, the reception of them was probably not prejudicial for the reason that those reports related only to the financial status during the first three months of the existence of the Coal River Collieries, during which period it was undisputed that the corporation had not, as yet, engaged in any of its intended business operations, excepting the preliminary sale of its capital stock and the acquisition of some leases for mines which it intended to operate. If there was anything prejudicial in proving, by incompetent copies, the financial status of the corporation, and that it was not operating a mine during the first three months of its existence, the next report filed in June, 1922, a photostatic copy of which was duly proven to be true and correct, disclosed the financial development of the corporation during its first fiscal year, and that its mine operations, which did not commence until March 1, 1922, had resulted in a loss from then until April 30, 1922. That showing for a period of actual operation was so much more detrimental to the apparent value of corporate stock as to undoubtedly supersede any prejudicial conclusion that might have been prompted by the incompetent copies.

Some of the errors assigned raise virtually the same questions that were passed upon in *Graff v. Tinkham, supra,* and it is apparent that the trial court endeavored to apply the opinion in that case. In doing so the court rightly received the defendant's manuscript copy of the newspaper article, which he had caused to be published, and which was held admissible in *Graff v. Tinkham, supra.* The manuscript copy as well as the newspaper article admitted of inferences which contradicted and impeached defendant's testimony on the trial, in relation to relevant matters. Considerable difficulty was encountered on the trial in ruling upon the reception of evidence relating to the value of the corporate assets. The learned circuit judge consistently endeavored to limit the proof to such evidence as tended "to reproduce the picture of the conditions" in 1922, in accordance with the decision in *Graff v. Tinkham, supra.* The problem was complicated because of the defendant's offer of the testimony of an apparently well qualified expert geologist and engineer who, in an official capacity for the state of West Virginia, had made extensive surveys, appraisals, and reports of the Coal River Colleries properties in 1924 and 1926, which well reflected the value of those properties in those years. However, in January, 1922, the Coal River Collieries had only one mine which had been theretofore operated, and when it first operated that mine in March and April, 1922, it sustained an operating loss of $10,006.90. Its mining assets then consisted primarily of unimproved leased acreage, which was considered suitable for mining operations, and the subsequent conditions and values in 1924 and 1926 were attributable largely to developments and improvements made by the Coal River Collieries, after January, 1922, with the proceeds received thereafter from the sale of its capital stock to plaintiff and other stockholders similarly situated. Consequently, the court rightly endeavored to confine the evidence received to such matters and conditions, which were

covered by the 1924 and 1926 surveys and appraisals, as were not materially changed after 1922. To hold otherwise, in relation to a business and project of such magnitude as was involved in this action, would open up nigh endless issues as to the sources and wisdom of investments in subsequent developments and improvements, and the character and effect thereof, and the extent to which they have in fact enhanced or detracted from the probable value on the date in issue.

Defendant also contends that the evidence does not warrant any assessment of damages except in some nominal amount. It is true that there is no proof of any such definite or undisputable figures that plaintiff's damages can be ascertained to a mathematical certainty by the application of any accepted formula or theory. However, even if that kind of result is unattainable in cases of this nature, this court has said: "Cases are not dismissed nor are judgments reversed merely because of difficulty in fixing accurately the amount of the damages." *Rogers v. Rosenfeld,* 158 Wis. 285, 149 N. W. 33. Such evidence as there is in the case at bar admits of the adoption by the jury of the computation suggested by plaintiff's counsel, and as the result of which the jury could conclude that at the time of plaintiff's purchase the value of the stock purchased by him was sixty per cent. of the $3,000 which he paid, and which, in the absence of other proof, was presumably what it would have been worth if the representations complained of had not been false.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.

A motion for a rehearing was denied, without costs, on February 9, 1932.